**RICHLAND PLANTATION COMPANY,**
Plaintiff-Appellee,

v.

**JUSTISS–MEARS OIL COMPANY, INC.,**
Defendant-Appellant.

No. 81–1366
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

March 25, 1982.

Rehearing Denied April 20, 1982.

---

John H. Minton, Jr., Tyler, Tex., R. Joseph Wilson, Jena, La., for defendant-appellant.

Jenkins & Gilchrist, John A. Gilliam, Charles A. Gall, Dallas, Tex., for plaintiff-appellee.

Before GEE, GARZA and TATE, Circuit Judges.

TATE, Circuit Judge:

This Texas diversity suit involves the construction of an agreement to pay an additional (or overriding) royalty in the event of production, beyond that provided by a mineral lease entered into the same day between the parties. The defendant producer-lessee ("Justiss") appeals from the district court's ruling that additional royalty payments are due to the plaintiff landowner-lessor ("Richland") under the additional-royalty agreement. Justiss, the appellant defendant, principally contends that the district court erred in finding ambiguity in the additional-royalty agreement, if construed together with the simultaneously executed lease, and in thus admitting extrinsic evidence to prove the intent of the parties.

We affirm, finding (a) that the district court correctly held that the agreement was ambiguous and that extrinsic evidence was properly admissible to aid in its construction and (b) that the district court was not clearly erroneous in its finding that the parties intended that the additional royalty not be subject to the proportionate reduction clause of the lease that was applicable to royalties provided by the lease itself.

*The Factual Context*

On November 11, 1975, after preliminary negotiations as to the percentage of royalties payable, Richland and Justiss entered into a mineral lease covering 4,251 acres of Richland's land. At the same time they signed an unrecorded letter agreement providing for the payment of an additional (or overriding) royalty in the event of production. At the time, Richland owned only one-half of the mineral interests in the land in question.

The substantial issue in this appeal is whether a proportionate reduction clause in the lease itself, requiring proportionate re-

duction in the lease-provided royalty payments if the lessor owned less than the whole mineral rights, was *also* applicable to the additional royalty specified by the supplemental letter agreement to be payable in the event of production.

*The Legal Principles Applicable*

The principle contention raised by Justiss is that the district court erred in finding the two clauses of a single agreement (*i.e.*, represented by the mineral lease and the unrecorded letter considered together) to be ambiguous, insofar as the application of the proportionate reduction clause to the overriding royalties (which per the unrecorded letter agreement were to be payable only in the event of production). The legal principles applicable to the ambiguity-or-not issue are essentially undisputed:

■ A contract is ambiguous when, after applying established rules of construction, it is reasonably susceptible to more than one meaning. *Universal C.I.T. Credit Corp. v. Daniel*, 150 Tex. 513, 243 S.W.2d 154, 157 (1951).

■ Under Texas law, the determination of whether or not a contract is ambiguous in order to permit extrinsic evidence of intent is a question of law. Once the contract is found to be ambiguous, however, the determination of the parties' intent becomes a question of fact. *Steuber Co., Inc. v. Hercules, Inc.*, 646 F.2d 1093, 1098 (5th Cir. 1981); *In re Stratford of Texas, Inc.*, 635 F.2d 365, 368 (5th Cir. 1981).

■ When faced with a question relating to the construction of a contract, Texas courts will take the wording of the instrument, consider the same in the light of the surrounding circumstances, and apply the pertinent rules of construction thereto and thus settle the meaning of the contract. *Harris v. Rowe*, 593 S.W.2d 303, 306 (Tex. 1979); *City of Pinehurst v. Spooner Addition Water Co.*, 432 S.W.2d 515, 519 (Texas 1968). *Hennigan v. Chargers Football Co.*, 431 F.2d 308, 314–15 (5th Cir. 1970). When several documents represent one agreement, all must be construed together in an attempt to discern the intent of the parties,

reconciling apparently conflicting provisions and attempting to give effect to all of them, if possible. *Modern American Mortgage Corp. v. Skyline Park*, 614 F.2d 1009, 1012 (5th Cir. 1980); *Republic Insurance Co. v. Hope*, 557 S.W.2d 603, 607 (Tex.Civ.App. —1977, no writ). That does not necessarily require that every provision in each document applies equally to all other documents being considered. *A. J. Robbins & Co. v. Roberts*, 610 S.W.2d 854, 856–57 (Tex.Civ.App.—1980, writ ref. n. r. e.). *See also Lawrence v. United States*, 378 F.2d 452, 461–462 (5th Cir. 1967). "Each provision is to be given its reasonable, natural, and probable meaning when considered in relation to the whole." *Hennigan, supra*, 431 F.2d at 315. However, the court should avoid interpreting a contract so as to render any provision meaningless. *R & P Enterprises v. LaGuarta, Gavrel & Kirk*, 596 S.W.2d 517, 518–19 (Tex.1980); *Universal C.I.T. Credit Corp. v. Daniel, supra*, 243 S.W.2d at 157–58.

■ When the contract is found to be ambiguous (i.e., open to two reasonable interpretations), then the agreement will be construed more strictly against the party who drafted it (in this case Justiss). *Chevron Oil Co. v. E. D. Walton Const. Co., Inc.*, 517 F.2d 1119, 1122 (5th Cir. 1975); *Republic National Bank v. Northwest National Bank*, 578 S.W.2d 109, 115 (Tex.1978).

*The Clauses at Issue: Ambiguous?*

By the lease executed November 11, 1975, the lessee Justiss agreed to pay the landowner-lessor Richland a ⅛th royalty on all oil and gas produced from the described land, but (applicable, since Richland owned only ½ of the mineral interest) the printed lease form also contained a "proportionate reduction" clause, which provided:

> If Lessor owns a less interest in the above-described land than the entire and undivided fee simple estate therein, then the royalties and rentals *herein provided* shall be paid to Lessor only in the proportion which Lessor's interest bears to the whole and undivided fee. (Emphasis supplied.)

Simultaneously with execution of the lease, Justiss and Richland executed a letter agreement, as "an unrecorded *supplement to* said lease" (emphasis supplied), which provided:

In the event production is actually obtained from the subject tract or from adjacent property with which all or a portion of the subject tract has been pooled or unitized to create a producing unit, Justiss-Mears Oil Company, Inc. will assign to Richland Plantation Company an additional royalty of *seven and one half percent (7½%) of eight-eighths (⅛ths)* of the oil, gas or minerals produced and sold from said well. The assignment shall be effective only as to that portion of the subject tract included within a producing unit. (Emphasis supplied.)

In the district court, both parties moved for summary judgment, on the contention that the two instruments construed as a single agreement unambiguously reflected their respective opposing contentions.

Richland, the landowner-lessor, points out that the reduction clause applied only to the royalties "herein provided" by the lease itself, *i.e.*, to the ⅛th primary royalty. Richland argues that the additional-royalty letter agreement was supplemental to the lease and that it specifically provided with regard to this specific issue, itself not regulated by the lease, that the additional or overriding royalty would be "seven and one-half percent (7½%) of eight-eighths (⅛ ths)" of the mineral production—*i.e.*, of the entire mineral production, not just of the one-half thereof attributable to Richland's one-half mineral interest.

On the other hand, the producer-lessee Justiss contends that the simultaneously executed letter agreement was specifically denoted as a "supplement to" the lease and that, as such, it was subject to all the clauses thereof regulating the payment of royalties,[1] allegedly including the proportionate reduction clause. Justiss argues that, because the letter agreement allegedly incorporated all the royalty provisions (except fractional share) of the original lease, it was unnecessary to specify that the proportionate reduction clause affected the overriding royalty provided by the supplemental agreement (*i.e.*, as well as the primary royalty provided by the lease itself).

█ The matter is not free from doubt. We were initially inclined to agree with Richland that the related but self-contained letter agreement with specific regard to the payment of additional royalties in the event of production *unambiguously* provided that such additional royalties (unlike the primary royalty) was to be based on the entire ⅛ths of the mineral production. Ultimately, however, we are unable to hold that the district court was in error when it found that the instruments construed together *were* ambiguous (*i.e.*, had two reasonably susceptible meanings), insofar as providing the proportionate reduction clause did apply to the additional overriding royalty as well as to the primary lease royalty. In reaching this conclusion, we take into consideration the entire instructions and the unexplained (on their face) circumstance that the percentage of overriding royalty would be paid on the entire mineral production of the tract (rather than only on the production attributable to Richland's one-half mineral interest.)

---

1. In addition to the proportionate reduction clause, the lease contained other general provisions which were to apply to the payment of royalties as follows:

   a. Paragraph 3, relating to mode of payment, right of lessor to purchase royalty oil, exclusion of gas lost in operations,

   b. Paragraph 5, provision for payment of shut-in royalties,

   c. Paragraph 7, authorizing pooling or unitization and apportionment of royalties within such units,

   d. Paragraph 9, authorizing use of oil, gas and other production for lease operations, authorizing royalties to be computed after deducting any so used,

   e. Paragraph 10, providing for registration of change of royalty ownership,

   f. Paragraph 11, authorizing withholding of royalties in the event of suit or adverse claim,

   g. Paragraph 14, committing royalties to entirety provision,

   h. Paragraph 16, authorizing Lessee to withhold royalties to discharge encumbrances.

*Extrinsic and Interpretative Evidence*

██ Based upon the parol testimony as to the confection of the lease and simultaneously-executed overriding-royalty letter agreement, substantial evidence supports the district court's finding that the contractual intent was that the additional or overriding royalty percentage was to be based on the entire (⅝ths) mineral production, not just the half mineral interest attributable to it. (Richland, as a large landowner with two other tracts sought after for leasing, was in a position to extract an extremely favorable bargain.) Its factual finding to this effect is thus not clearly erroneous and reversible.

Further, Justiss itself subsequently executed an unrecorded assignment of overriding royalty in favor of Richland, which corroborates this construction of the instrument.[2] In September of 1976, immediately prior to production on the lands covered by the lease, Justiss executed an Assignment of Overriding Royalty (dated November 11, 1975, the date of the lease and letter agreement), which conveyed to Richland an overriding royalty of 7½% of ⅝ths of the oil and gas produced under the mineral lease in question. The assignment contained, in paragraph 1, a stipulation that: "The overriding royalty herein assigned shall not be subject to diminuzation."[3] The assignment thus executed by Justiss was forwarded by it to Richland, with a request that the latter examine it and advise Justiss of problems or questions, if any. Richland examined it and found it to be in accordance with the letter agreement as construed by it—*i.e.*, that the overriding royalty should not be diminished or reduced by the reduction clause in the lease; it therefore retained the assignment in its files.[4] "[G]reat, if not controlling, weight should be given by the court to the interpretation placed upon a contract of uncertain meaning by the parties themselves." *Harris v. Rowe*, 593 S.W.2d 303, 306 (Tex.1979); *Esso International, Inc. v. SS Captain John*, 443 F.2d 1144, 1151 (5th Cir. 1971).

*Conclusion*

Accordingly, the district court correctly held that the additional or overriding royalty provided by the letter agreement was not intended to be diminished through the proportionate reduction clause, and we AFFIRM its judgment.

AFFIRMED.

---

2. We are considering this assignment as evidence of the subsequent construction by the parties of an ambiguous instrument. A strong argument could be made, as did Justiss (for some purpose) in the district court, that the assignment should be considered as the merger, performance, and consummation of the earlier letter agreement to assign additional royalties when production eventuated (which production was the occasion for the forwarding of the assignment executed by Justiss to Richland for its files). If so, then the three instruments (original lease, letter agreement, and later assignment) construed together unambiguously provide that the overriding royalty "shall not be subject to diminuzation." Even if the latter term should be deemed to be ambiguous, then the parol evidence (as evaluated by the district court) unmistakably shows that it referred to diminishing through the reduction clause.

3. Neither party seriously contests that the term "diminuzation" used by Justiss in drafting the agreed upon assignment was not intended to be "diminution."

4. The dispute did not arise until August 1978, almost two years later, when Justiss prepared division orders that allowed Richland only one-half of 7½% of ⅝ths of the production. It thus for the first time raised a contention that the reduction clause in the lease itself applied to additional overriding royalty provided by the letter agreement, as well as to the primary royalty provided by the lease. Richland refused to sign the division orders and requested reformation to reflect its understanding of the agreement. When Justiss refused, this litigation followed.