**TEXAS COMMERCE BANK
NATIONAL ASSOCIATION,
Plaintiff-Appellant,**

v.

**NATIONAL ROYALTY CORPORATION,
Defendant-Appellee.**

No. 86–2037.

United States Court of Appeals,
Fifth Circuit.

Sept. 17, 1986.

Rehearing Denied Oct. 24, 1986.

Liddell, Sapp, Zivley, Brown & LaBoon, D. Mitchell McFarland, Kem Thompson, Houston, Tex., for plaintiff-appellant.

Fulbright & Jaworski, Stephen C. Ascher, Houston, Tex., for defendant-appellee.

Before GEE and HILL, Circuit Judges, and HUNTER,* District Judge.

GEE, Circuit Judge:

Texas Commerce Bank appeals from the district court's order of judgment for the defendant National Royalty Corporation after a bench trial. We affirm.

This dispute pits two lenders, Texas Commerce Bank National Association (TCB) and National Royalty Corporation (NRC), against each other over an assignment made in connection with loans to Lewis Energy Corporation, an oil and gas exploration company that fell victim to the drop in the energy market in the early 1980s. Before that assignment, Lewis Energy had borrowed more than $6,000,000 from TCB and more than $5,000,000 from NRC. These loans were secured by Lewis Energy's producing properties, including leases on 147,000 acres in Michigan's Central Basin (the "Michigan Leases"), at that time considered the most valuable asset of Lewis Energy. Because of cash flow problems in September 1981, Lewis Energy sought an additional $1,000,000 loan from its lenders.

NRC, unwilling to lend the money itself, negotiated with TCB to structure a transaction in which TCB lent the additional $1,000,000 and NRC subordinated its first lien on the Michigan Leases to the new loan *pro tanto*. On October 13, 1981, the lenders and Lewis Energy entered into two agreements: in the first, Lewis Energy agreed with NRC to sell the Michigan Leases no later than December 31, 1981; in the second, NRC assigned to TCB "the first One Million Dollars received by NRC by virtue of its holding of the liens ... or by virtue of the sale, transfer or other disposition ... of any of the property subject to the NRC mortgage...." TCB then loaned Lewis Energy the additional $1,000,-000.

The subsequent events typify a good deal gone bad. Lewis Energy failed to sell the Michigan Leases by December 31, 1981, and shortly thereafter agreed to convey title to the leases to NRC in trust. Two weeks later Lewis Energy took bankruptcy, and the bankruptcy court stayed NRC's efforts to sell the leases. During 1982 and the beginning of 1983, TCB and NRC tried unsuccessfully to work out a way to sell the leases free and clear of the bankruptcy proceedings.

In April 1983, the Bankruptcy Trustee for Lewis Energy transferred title to the Michigan Leases to a subsidiary of NRC; and NRC agreed to look solely to the Michigan Leases to recover its loans, specifically recognizing the TCB $1,000,000 lien on the leases. In 1984 and 1985, the subsidiary of NRC received offers to purchase the leases and presented them to TCB for approval. The subsidiary has sold all of the leases and assigned all of the proceeds from the sales to TCB, an amount equal to $313,-372.05, in addition to the right to receive overriding royalty payments of up to one million dollars.

The district court concluded that the April 1983 agreement between Lewis Energy and NRC transferring the leases to a subsidiary of NRC did not constitute a transfer or sale as contemplated by the October 1981 assignment. The court further determined that NRC had not breached the October 1981 assignment to TCB.

Appellant TCB argues that the April 1983 agreement between NRC and the Trustee for Lewis Energy qualified as a "sale, transfer or other disposition" of the Michigan Leases under the October 1981 assignment and thereby entitled TCB to receive $1,000,000 from NRC. The dispute thus boils down to an interpretation of the October 1981 assignment between NRC and TCB.

Ordinarily, the interpretation of a contract is a question of law, and appellate review is not limited by the clearly erroneous standard. *Paragon Resources, Inc. v.*

---

* District Judge of the Western District of Louisi-        ana, sitting by designation.

*National Fuel Gas Distribution Corp.,* 695 F.2d 991, 995 (5th Cir.1983). When extrinsic evidence is used to interpret an ambiguous contract, however, the clearly erroneous standard applies. *Id.*

The determination whether a contract is ambiguous is a question of law. *Richland Plantation Co. v. Justiss-Mears Oil Co.,* 671 F.2d 154, 156 (5th Cir.1982). Under Texas law, "[a] contract is ambiguous when, after applying established rules of construction, it is reasonably susceptible to more than one meaning." *Id.* Furthermore, Texas courts follow the rule of construction that contemporaneous documents should be construed together to discern the parties' intent, *id.,* and such instruments may be construed together even though they are not between the same parties. *Jones v. Kelley,* 614 S.W.2d 95, 98 (Tex. 1981).

Application of these rules to the facts in this case reveals that the October 1981 assignment is open to two reasonable interpretations. TCB insists that the strict definitions of "sale, transfer or other disposition" form the essence of the contract. NRC, however, focuses on the references in the assignment to "funds received," "the first One Million Dollars received by NRC," and "[t]he Assigned Sum shall be paid to Texas Commerce as promptly as possible following receipt of the same by NRC," in addition to the references to the agreement between NRC and Lewis Energy executed the same day. The NRC–Lewis Energy agreement defined sale as "a conveyance of such leases for consideration consisting of cash. . . ." This more restrictive interpretation of the contract is reasonable and makes the contract ambiguous, allowing receipt of extrinsic evidence of the parties' intent.

Substantial evidence supports the district court's finding that "[t]he whole tenor of the agreement speaks to a sale for money or its equivalent. . . ." This determination of the intent of the parties when they executed the assignment, in turn, supports the district court's conclusion that the

April 1983 agreement between NRC and Lewis Energy did not trigger the "sale, transfer or other disposition" clause in the October 1981 assignment. These findings are not clearly erroneous under the Fed.R. Civ.P. 52(a) standard. In view of this, we cannot disturb the district court's disposition of the main case.

Appellee NRC contends on cross-appeal that it was entitled to a declaratory judgment that the October 1981 assignment had been fully performed and was no longer of any force or effect. Appellee seeks attorney's fees in connection with the declaratory judgment action. Appellee, however, failed to file notice of cross-appeal and in its absence cannot attack the district court's decree with a view to enlarging its rights. *Morley Construction Co. v. Maryland Casualty Co.,* 300 U.S. 185, 191, 57 S.Ct. 325, 327–28, 81 L.Ed. 593 (1937). We agree, moreover, with the district court's determination that NRC's counterclaim was a defense on the merits.

All aspects of the district court's judgment are therefore AFFIRMED.