**Alan J. BOUDREAUX,**
**Plaintiff–Appellant,**

**v.**

**UNIONMUTUAL STOCK LIFE INSURANCE COMPANY OF AMERICA, et al., Defendants–Appellees.**

**No. 87–3527**
**Summary Calendar.**

United States Court of Appeals, Fifth Circuit.

Jan. 7, 1988.

Steven K. Faulkner, Jr., Metairie, La., for plaintiff-appellant.

Thomas P. Anzelmo, Lauren A. Welch, McGlinchey, Stafford, Mintz, Cellini & Lang, New Orleans, for defendants-appellees.

Before RUBIN, GARWOOD and JONES, Circuit Judges.

GARWOOD, Circuit Judge:

Plaintiff-appellant Alan Boudreaux (Boudreaux) appeals the district court's grant of the motion of UNUM Life Insurance Company of America (UNUM)[1] for summary judgment on Boudreaux's breach of contract claim. We affirm.

### Facts and Proceedings Below

Sometime prior to July 1984, UNUM issued to Boudreaux two insurance policies containing disability income benefits. Together these policies provided for disability payments of up to $4,000 per month. These policies also contained identical provisions to the effect that "[i]f the insured is receiving monthly benefits for total disability, the company, upon written request from the insured, will consider a rehabilitation program for the insured."[2]

In 1984, Boudreaux became disabled within the meaning of these two policies. According to his treating physician, Dr. James Denney (Denney), Boudreaux suffered from a mixed personality disorder with prominent narcissistic and other features. This physician also stated that Boudreaux had difficulty in relating to authority figures and in reacting in highly structured settings. Because this disorder rendered Boudreaux totally disabled, UNUM began paying Boudreaux the maximum disability benefits allowable under these two policies.

On September 24, 1985, Boudreaux's attorney, Steven K. Faulkner (Faulkner), wrote a letter to UNUM asking whether UNUM would be interested in assisting Boudreaux in an attempt to rehabilitate by enrolling in the Ph.D. program in Latin American Studies at Tulane University. This request was referred by UNUM to Kay McDevitt (McDevitt), a registered nurse who was also a nationally certified rehabilitation counselor and a nationally certified insurance rehabilitation specialist. After reviewing Boudreaux's file, including a supplemental report prepared by Denney,[3] McDevitt concluded that she needed more information about the program before she could decide whether it was advisable. On October 8, 1985, McDevitt contacted Faulkner by telephone. After discussing the proposed rehabilitation program with Faulkner, McDevitt concluded that the proposed rehabilitation program was not advisable. Specifically, she determined that Boudreaux was too ill to participate in such a program at that time. McDevitt advised Faulkner accordingly.

In January 1986, Faulkner asked UNUM to reconsider its position with respect to Boudreaux's enrollment in the Ph.D. program in Latin American Studies at Tulane University. On February 20, 1986, McDev-

---

1. UNUM is the successor to Unionmutual Stock Life Insurance Company of America. Because it does not affect the result in this case, we refer to both corporations collectively as UNUM.

2. The entire clause reads as follows:
 "REHABILITATION. If the insured is receiving monthly benefits for total disability, the company, upon written request from the insured, will consider a rehabilitation program for the insured. The extent of the company's participation in the program shall be determined by mutual agreement between the insured and the company giving consideration to such items as additional living costs, tuition and books. Monthly benefits shall continue to the insured during his rehabilitation subject to the terms of the agreement."

3. In his report, Denney stated that "retraining at a college or graduate level in a[n] academic area other than law would be both a potential and therapeutic, provided it is started slowly and is in a field in which he will have a minimum of interaction [with] authority figures and will have a reasonable possibility of success so as to aid in an increase of self-esteem."

itt telephoned Faulkner to discuss Boudreaux's progress. After discussing the matter with Faulkner and reviewing the medical reports, McDevitt again concluded that due to the nature of Boudreaux's disability, Boudreaux's participation in the requested program was inadvisable.

There is no evidentiary indication whatever in the record that Boudreaux ever requested any rehabilitation program other than the Tulane Latin American Studies Ph.D. program, or that he ever solicited counterproposals or suggestions of any kind from UNUM, or that UNUM ever indicated it would not approve any other program, or that UNUM ever refused any request to investigate any aspect of the Tulane Latin American Studies Ph.D. program (or any other programs). There is no evidence that Denney (or any other professional) ever recommended the Tulane Latin American Studies Ph.D. program as appropriate rehabilitation for Boudreaux or that McDevitt was not fully qualified to make the recommendation she did.

On January 7, 1987, Boudreaux commenced this action by filing a petition with the district court of the State of Louisiana. On February 18, 1987, UNUM removed the action to federal district court. UNUM then filed a motion for summary judgment. In addition to supporting affidavits, the motion was accompanied by a "Statement of Uncontested Material Facts." In opposing this motion, Boudreaux did not take issue with UNUM's recitation of the facts. Instead, Boudreaux simply developed his argument that UNUM had an affirmative obligation to participate in his rehabilitation. On June 23, 1987, the district court granted UNUM's motion for summary judgment on the ground that the policies in question did not impose an obligation on UNUM to provide rehabilitation to Boudreaux and that UNUM otherwise met its obligations under those policies. This appeal followed.

### Discussion

Under the Federal Rules of Civil Procedure, summary judgment is appropriate when the pleadings, affidavits, and other documents submitted to the district court "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In the present case, there is no genuine issue of material fact. Although the parties do disagree on whether UNUM met its obligations under the policies it issued to Boudreaux, that disagreement centers on how a particular clause in those policies, namely, the rehabilitation clause, is interpreted. The parties have not cited us to any authorities dealing with similar contractual provisions, nor has our own research disclosed any. We conclude that this clause is not ambiguous in any presently material respect. *Cf. Theriot v. Bay Drilling Co.*, 783 F.2d 527, 540 (5th Cir.1986). Because the proper interpretation of an unambiguous contract is a legal issue, *see Christopher v. Safeway Stores, Inc.*, 644 F.2d 467, 471 (5th Cir. 1981), it may appropriately be decided on a motion for summary judgment. *See Central Oil & Supply Corp. v. United States*, 557 F.2d 511, 515 (5th Cir.1977); *International Association of Machinists v. Texas Steel Co.*, 538 F.2d 1116, 1119 (5th Cir.), *cert. denied*, 429 U.S. 1095, 97 S.Ct. 1110, 51 L.Ed.2d 542 (1976). Consequently, the only question to be decided is whether UNUM was entitled to judgment as a matter of law.

In deciding whether UNUM was entitled to judgment as a matter of law, we must first determine whether the district court correctly interpreted the policies in question. As noted above, the district court found that the language of the rehabilitation clause contained in the two policies merely obligated UNUM to consider any rehabilitation proposal that Boudreaux might make, but no more than that. Because UNUM's actions clearly sufficed to meet this obligation—the undisputed summary judgment "evidence" showing that UNUM acted diligently and in good faith—the district court concluded that UNUM was entitled to judgment as a matter of law. Boudreaux attacks the district court's reasoning by arguing that the use of words of mandate like "shall" and "will" in the rehabilitation clause evidences an obli-

gation on the part of UNUM to do more than merely "consider" any rehabilitation proposal Boudreaux might make, but actually to implement such a proposal. Boudreaux further suggests that an interpretation finding any lesser obligation would simply render the rehabilitation clause meaningless.

We are not persuaded by Boudreaux's arguments. Although it is true that "shall" and "will" are words of mandate, the question is not whether they mandate something, but what they mandate. The word "will," for example, precedes "consider" in the phrase "the company ... *will consider* a rehabilitation program for the insured" (emphasis added). Although it is true that that language imposes an obligation on UNUM, the obligation is not to participate, but merely to *consider*—presumably in good faith—participating in a requested rehabilitation program for Boudreaux. Similarly, the word "shall," which appears in the phrase "[t]he extent of the company's participation in the program shall be determined by mutual agreement," does not evidence an obligation on UNUM's part to participate in a rehabilitation program under all circumstances. Rather, the use of the word "shall" in that phrase simply imposes an obligation on UNUM to seek—presumably in good faith—agreement with Boudreaux on the extent of its participation if and when a rehabilitation program is selected. That these obligations do not amount to an obligation to fund a rehabilitation program under all circumstances hardly requires emphasis.

We also disagree with Boudreaux's contention that the district court's construction of the rehabilitation clause effectively rendered that clause meaningless. True, the rehabilitation clause could have been written in a way that had greater meaning and advantage for one party or the other. For example, it could have been written to require Boudreaux to participate in a rehabilitation program reasonably chosen by UNUM or face a cutoff of his benefits under the policies. Alternatively, it could have been worded so as to require UNUM to accede to any reasonable proposal that Boudreaux presented. However, the fact that the rehabilitation clause failed to impose such burdensome obligations on one party or the other does not mean that the clause was meaningless; it simply means that UNUM's obligation to consider in good faith any rehabilitation proposal that Boudreaux might make was relatively modest in extent. The fact that the obligations imposed by the rehabilitation clause are less extensive than Boudreaux now wishes they were is no reason to now rewrite them in his favor on the theory that otherwise they are meaningless.

Under the district court's interpretation of the rehabilitation clause, which we view as correct, there is no doubt that UNUM met its obligations under these two policies. Accordingly, we agree with the district court that UNUM was entitled to judgment as a matter of law.

### Conclusion

Because there was no genuine issue as to any material fact and because UNUM was entitled to judgment as a matter of law, the district court properly rendered summary judgment in favor of UNUM. The judgment is therefore

AFFIRMED.