Veit HANSSEN, Plaintiff–Appellee,

v.

**QANTAS AIRWAYS LIMITED,**
Defendant–Appellant.

No. 89–2718.

United States Court of Appeals,
Fifth Circuit.

June 27, 1990.

---

**17.** Brief of Petitioner at 32.

Thomas J. Whalen, Moffett B. Roller, Condon & Forsyth, Washington, D.C., William A. Durham, Houston, Tex., for defendant-appellant.

Veit Hanssen, Seabrook, Tex., pro se.

Before THORNBERRY, GEE, and WILLIAMS, Circuit Judges.

THORNBERRY, Circuit Judge:

Appellant Qantas Airways Ltd. (Qantas) appeals the district court's grant of summary judgment in favor of appellee Veit Hanssen holding Qantas liable for breach of contract and awarding Hanssen damages in the amount of $249,951.37. Find-

ing that summary judgment was inappropriate, we reverse and remand.

Facts and Procedural History

This case involves a contract dispute between Hanssen, a tour operator, and Qantas, an airline. The controversy centers on whether Qantas agreed to confirm 406 seats for Hanssen in return for a ten percent deposit he placed on the seats.

As early as 1983, Hanssen began organizing tours for Australia in anticipation of the appearance of Halley's Comet in April 1986. Australia was considered to be one of the best geographical locations in which to see the comet, and Hanssen had secured reservations at some of the best hotels. In February 1985, Hanssen requested Qantas to reserve blocks of seats on Qantas for his tours. No further action was taken until September 1985, when an associate of Hanssen made changes to the earlier request for seats.

On November 7, 1985, Qantas sent a telex to all of its sales managers, including Carl Dagilis, informing them that approximately 271 groups had 12,100 seats, either booked or on waitlist. To ensure maximum usage of available capacity, the telex stated that each group would be required to pay a deposit of ten percent on the number of seats held. In November 1985, Dagilis met with Hanssen to review his request for seats and to inform him of the deposit requirement. Following that meeting, Dagilis sent a telex to the group reservations office setting forth the 406 seats requested by Hanssen. Some of the seat requests had been confirmed, while most were still waitlisted.

In a letter dated December 2, 1985, Qantas formalized its deposit requirement. The letter states in relevant part:

Further to our previous discussions, Halley's comet has created an enormous amount of interest in the South Pacific. In order to protect the group space for those who have solid commitments, we are requiring a 10% deposit to Qantas for all groups during this time period.

\* \* \* \* \* \*

Thank you for understanding the necessity of this policy. Please forward your MCO [deposit] to this office by 05 DEC 85, or we will have to release the seats you have blocked, whether confirmed or not.

On December 5, 1985, Hanssen paid Qantas $40,437.60 as deposit for the 406 seats.

On January 13, 1986, Hanssen met with Dagilis and Ron Clark, the marketing representative for Trans Australia Airlines (TAA). Hanssen had also requested seats on TAA, which would provide domestic air service for his tours, though no deposit was paid for the TAA seat requests. At this meeting, Dagilis advised Hanssen that as of January 13th, Qantas had not been able to confirm all of his requested seats, but that it was continuing its efforts to do so. Clark told Hanssen that the same situation existed at TAA. Hanssen testified that this was the first time since he paid the deposit that he became aware that all of his seats were not confirmed. On January 15, 1986, Hanssen wrote Qantas that he was discontinuing all of his marketing efforts because his seats had not been confirmed.

Hanssen eventually brought suit against Qantas alleging that the December 2 letter constituted an unambiguous contractual obligation of Qantas to confirm all seats for which he paid a deposit.[1] He maintained that if Qantas had confirmed all 406 seats by mid-January, he would have sold the remaining 289 package tours before the ticketing deadline of mid-March 1986.[2] Hanssen also claimed that Qantas was liable for failing to confirm seats on TAA, the domestic carrier. Finally, he claimed that Qantas's negligence or default caused one of his tours to return a day early, requiring Hanssen to pay his tour participants $3,670.50 in compensation.

Following a short hearing, the district court granted Hanssen's motion for summary judgment finding that the December 2 letter constituted an unambiguous agreement by Qantas to guarantee that all 406 seats requested by Hanssen would be confirmed upon payment of the deposit. The court further found that Qantas was liable for failing to confirm seats on TAA, and that it was liable for causing one of Hanssen's tours to return a day early. After trial on the issue of damages, the court awarded Hanssen damages of $168,618.21, plus attorney's fees and prejudgment interest for a total of $249,951.37. Qantas brought this appeal.

## Discussion

█ Under Texas law, whether a contract is ambiguous is a question of law for the court subject to de novo review. *Texas Commerce Bank N.A. v. National Royalty Corp.*, 799 F.2d 1081, 1083 (5th Cir. 1986). If a contract is found to be unambiguous, its interpretation is a part of the court's law obligation. *Chapman & Cole v. Itel Container Int'l B.V.*, 865 F.2d 676, 681 (5th Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 201, 107 L.Ed.2d 155 (1989). A Texas court will deem a contract unambiguous when it is reasonably open to just one interpretation given the rules of interpretation and the surrounding circumstances. *Technical Consultant Servs., Inc. v. Lakewood Pipe of Texas, Inc.*, 861 F.2d 1357, 1362 (5th Cir.1988).

█ Qantas complains that the district court erred in granting summary judgment on the basis that the December 2 letter constitutes an unambiguous agreement to confirm all seats for which Hanssen paid a deposit.[3] Qantas argues that the contract

---

1. Hanssen originally brought suit in state court, but Qantas removed the case to federal court pursuant to 28 U.S.C. § 1441(d), since Qantas was a corporation owned by the Australian government.

2. Although the ticketing deadline was mid-March, Hanssen's own advertisements for his tours had a deadline of February 1, 1986.

3. Qantas also complains that the district court erred in failing to make specific findings of fact

and law to support its liability determination. The interpretation of an unambiguous contract is legal question, however, and a court may decide the issue on a motion for summary judgment. *Boudreaux v. Unionmutual Stock Life Ins. Co. of Am.*, 835 F.2d 121, 123 (5th Cir.1988). Although this court has emphasized the importance of providing findings of fact or conclusions of law in summary judgment cases, *see, e.g., Myers v. Gulf Oil Corp.*, 731 F.2d 281, 283–84 (5th Cir.1984), such findings may not be

is an unambiguous agreement to hold all requested seats, both confirmed and waitlisted, after which Qantas would try to confirm the waitlisted seats. Alternatively, Qantas argues that the contract is ambiguous, and that a full trial considering other extrinsic evidence such as prior communications and standard airline practice is necessary to ascertain the true meaning of the agreement. We agree with the latter argument.

In analyzing the contract, the district court ruled that "the letter on its face is unambiguous and would lead a fully informed, disinterested person to conclude, without ambiguity, that [Hanssen had] a firm reservation." Once Qantas accepted the deposit for the 406 seats, the court held that Qantas was obligated to confirm or otherwise guarantee those seats, whether those seats were previously confirmed or waitlisted. Although this may be a possible interpretation, we cannot conclude that it is the only reasonable interpretation, especially when we consider the circumstances under which the parties made the contract.

Nowhere does the letter unambiguously state that all seats would be confirmed upon acceptance of the deposit. Rather, the letter states that the deposit would "protect group space." As the district court itself recognized, "[g]roup space implies nothing about whether the space is confirmed or unconfirmed." It follows that the mere statement that a deposit would "protect" that group space does not unambiguously indicate that all of the group space, including unconfirmed space, would thereby become confirmed. Rather, it could simply mean that Hanssen's request for seats would be protected from forfeiture. Similarly, the statement that absent a deposit, Qantas "will have to release the seats you have blocked, whether confirmed or not," does not unambiguously suggest that accepting a deposit will confirm all group space. It simply states that Hanssen will lose all of his seat requests, even those that had been confirmed, unless a deposit is made.

Under Texas law, the contract must be analyzed in light of all of the surrounding circumstances. *E.g., Technical Consultant,* 861 F.2d at 1362; *Airmark, Inc. v. Advanced Sys., Inc.,* 715 F.2d 229, 230 (5th Cir.1983). Considering all of the circumstances, we think that two reasonable interpretations are possible. The first one, as found by the district court, is that Qantas agreed to confirm or otherwise guarantee all seats on which a deposit was made. The second interpretation is that a deposit would merely preserve the status quo. This second interpretation makes sense when one considers the circumstances surrounding the agreement. Hanssen acknowledged that before he received the letter or paid his deposit, he knew that not all of his seats were confirmed. It was also common knowledge that tour operators like himself often overbooked seat requests. This was especially true for the period of April 1986, when demand due to Halley's Comet was extraordinary. Thus, unlike an individual's request for seats, tour operators' requests were not immediately confirmed since they often overbooked and did not have actual participants for the seats. Qantas argues that the purpose of the deposit was to eliminate those tour operators' requests that were not serious so that it could free up seats for those tour operators with solid commitments. Qantas contends that paying the deposit did not and could not guarantee that all group space would become confirmed, because even with the deposit requirement, there remained a strong possibility that the requests for seats would exceed supply. Thus, paying the deposit merely preserved the status quo—and those seats which were previously waitlisted were still waitlisted—but hopefully the deposit requirement would make confirmation easier by eliminating spurious requests. Either of these interpretations is possible and reasonable, and neither is unambiguously stated in the letter.

We further note that the letter completely fails to mention certain obligations for which the district court held Qantas liable.

required, *see* Fed.R.Civ.P. 52(a), and in this case

effective appellate review is still possible.

For example, the district court held Qantas liable for failing to confirm seats on TAA, even though the letter makes no mention of any such obligation, and even though no deposit was paid on those seats. The fact that the letter fails to mention this and other obligations undercuts its basis as constituting a complete and unambiguous agreement between Qantas and Hanssen. For these reasons, we hold that the contract is ambiguous and creates a genuine issue of material fact, and therefore we remand for a full trial considering standard airline practice and other extrinsic evidence to determine the meaning and intent of the parties' agreement.

Although we reverse the liability determination for a new trial, we also note our concern over the lack of adequate findings to support the district court's determination of damages. As mentioned above, not only did the court impose damages for obligations not mentioned in the letter, it also made other damage determinations without the necessary findings. For example, the evidence is in dispute as to whether Hanssen could have sold his remaining tours in the two months preceding the ticketing deadline, and such an accomplishment seems even more unlikely considering Hanssen's own earlier deadline of February 1, 1986. Given the short period of time left, the limited pool of possible participants, and the expense of the tours, it seems doubtful that Hanssen could have sold all of the remaining tours. There is also disputed evidence regarding lost profits for the Tahiti extension, and it is unclear if and how the court offset the damages for no-shows. In sum, our review of the district court's determination of damages is not possible without more thorough findings of fact and law. Therefore, the judgment of the district court is REVERSED and REMANDED for a new trial.

**JERRE S. WILLIAMS,** Circuit Judge, concurring in part and dissenting in part:

I dissent from the holding of the majority of the Court that travel agent Hanssen did not receive guaranteed airline seats from Qantas when he placed with Qantas a 10% payment as to each seat as required by the airline. In my view the summary judgment in favor of Hanssen granted by the district court on this issue was correct. A binding contract had been entered. I am in full agreement with all of the remainder of the opinion of the majority. The contract does nothing to cover reservations on Trans Australia Airlines. Nor does it have any relevance to the claimed lost profits for a Tahiti extension tour.

The overwhelming and controlling fact to me is that the airline requirement that the travel agent put down a deposit of 10% for each seat requested means that the travel agent was being required by the airline to buy something. Under the analysis of the majority opinion, he bought nothing. Qantas tries to explain the demand for the down payment simply on the ground that they wanted to find out who was serious about reserving seats to Australia. Well, they did find out; agent Hanssen was serious enough to pay in advance 10% of the cost of each seat. He met their requirements.

If the deposit was meant to mean no more than a general indication that the travel agent was "serious", there certainly could be simple language in the contract, drafted by Qantas, which would cover the point. If Qantas intended not to be bound, they could easily have said in their 10% requirement that payment of the deposit did not constitute an obligation to guarantee seat availability by Qantas. They made no such limitation. A contract is to be construed against the party responsible for its wording. I simply cannot read anything in the Qantas offer and the Hanssen down payment response that does anything other than constitute a promise by Qantas that it was selling a guarantee of seat availability to Hanssen for a 10% down payment on each seat. I repeat, any other interpretation simply means that Qantas was not promising a single thing for its receiving 10% of the fare on each seat reservation requested by Hanssen.

Interpretation of a contract is a legal matter. The contract is not one which is ambiguous, needing an explanation through the mechanism of a trial. On its

face the contract is unambiguous, and travel agent Hanssen was entitled to the summary judgment he received on this issue.

I repeat my full agreement with the issue of reservations on Trans Australia Airways and other damages stemming from other matters. They were not covered at all in the clear and precise wording of the contract between the parties requiring the 10% payment. Thus, the case must be reversed, but it should be reversed only as to those matters. The summary judgment as to the Qantas obligation clearly undertaken by its firm and precise offer should not be at issue in the trial of the other issues in the case.