**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 95-40175
No. 95-40514
_____


POLO CLUB OFFICE PARK,

        Plaintiff-Counter Defendant-Appellee,

    VERSUS

    HARRISON VICKERS,

        Defendant-Third Party Plaintiff-
        Counter-Claimant-Appellee-Appellant,

    VERSUS

JIM ARNOLD CORPORATION, JIM ARNOLD, and EARL E. ENNIS,

        Third Party Defendants-Appellants.


_____

Appeal from the United States District Court
for the Eastern District of Texas
_____

September 4, 1996

Before KING, SMITH, and WIENER, Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]


    In this consolidated appeal, Harrison Vickers challenges the

judgment that Polo Club Office Park ("Polo Club") recover from him

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

the principal balance due on a note. Third-party defendants Jim Arnold Corporation ("JACOR"), Jim Arnold, and Earl Ennis (collectively "third-party defendants") appeal summary judgment in favor of Vickers on the issue of indemnity. We affirm in both appeals.

I.

In 1984, Vickers borrowed $125,000 on behalf of JACOR from the Century National Bank ("CNB"). He executed a note evidencing JACOR's indebtedness (the "1984 Note") and signed a personal guarantee. According to the third-party defendants, Vickers pledged, as collateral, 10,000 shares of JACOR stock that he had fraudulently created.

On April 26, 1986, Vickers resigned as president of JACOR and notified CNB of his resignation. In 1988, he once again became involved with JACOR, this time at the behest of Mary Nell Arnold, Arnold's daughter. CNB was threatening legal action, and Arnold refused to speak with them. At the time, the only viable asset owned by JACOR was a cause of action against the Al Monsoori Group.

In 1988, CNB and Vickers reconfigured the 1984 Note into a real estate lien note (the "Note") in Vickers's name. The Note references the "New York Prime" rate but not a particular bank or index. Vickers also executed a loan agreement (the "Loan Agreement") with CNB on the same day.

In October 1988, Arnold sold JACOR to Ennis. Subsequently, Vickers asserted claims to JACOR's assets. The parties settled

2

their dispute by entering into a mutual release, which was modified and superseded by a June 15, 1989, mutual release (the "Release Agreement"). It provided that the third-party defendants would indemnify Vickers for the CNB debt and that Vickers would release the third-party defendants from any claims related to the ownership or operation of JACOR.

On March 29, 1991, JACOR brought suit against Vickers in state court ("State Suit No. 1"), claiming that Vickers had created fraudulent stock certificates, committed bank fraud, and tortiously interfered with JACOR's business relationship with Guanaco Oil. Vickers sought leave to join Arnold and Ennis as necessary parties and file counterclaims against the third-party defendants, alleging that they breached the Release Agreement.

In the interim, CNB failed and was taken over by the FDIC. On February 10, 1992, Polo Club purchased the Note as one of a package of loans it acquired from the FDIC. Polo Club brought suit against Vickers on the Note in state court ("State Suit No. 2"). Vickers filed a third-party claim against JACOR, alleging that the Note was to be paid from the Al Monsoori proceeds. JACOR filed a counter-claim against Vickers.

In late 1992, JACOR won a verdict of approximately $4 million in the Al Monsoori lawsuit, and Ennis made arrangements to settle the judgment. Polo Club received written notification on September 22, 1992, that it should take action to collect the Note from the proceeds of the suit. Polo Club took no action, and the

3

third-party defendants disbursed the funds without paying Polo Club.

In January 1993, after a six-week trial in State Suit No. 1, the court entered a directed verdict on approximately fifty claims made by JACOR. The jury found zero liability and zero damages on claims against Vickers. The jury also found that Vickers never owned any stock or equity interest in JACOR and that Vickers did not perform under the Release Agreement.

On September 1, 1993, Polo Club non-suited Vickers in State Court Suit No. 2. Three weeks later, it filed the instant action in federal court. Vickers impleaded the third-party defendants, claiming that they owed him indemnity pursuant to the Release Agreement. The district court granted summary judgment for Vickers against the third-party defendants. Polo Club's claims against Vickers were tried to the court, which entered judgment for Polo Club. Vickers and the third-party defendants appealed.[1]

II.

We begin with three threshold inquiries. The first is whether the district court erred in finding complete diversity among the parties. The second is whether we have jurisdiction in No. 95-40175, which was filed after the entry of summary judgment. The third is whether we have jurisdiction in No. 95-40514, which was

---

[1] The third-party defendants filed an appeal after the entry of summary judgment and again after the conclusion of the bench trial.

4

filed after the bench trial.

### A.

Our review of the record satisfies us that the district court did not err in determining that there was complete diversity. Vickers relies on Ryan's testimony that he was a "partner *with* Polo Club in one or two situations." That testimony simply demonstrates that Ryan at times was a partner with Polo Club. Such a proposition is altogether different from the notion that Ryan is a partner *in* Polo Club.

Nothing else in the record supports a finding that Ryan was a partner therein. Moreover, nothing supports a conclusion that Ryan had a right to control or manage Polo Club. *See FDIC v. Claycomb*, 945 F.2d 853, 858 (5th Cir. 1991), *cert. denied*, 112 S. Ct. 2301 (1992) (finding that one characteristic of a partnership is a mutual right of control or management of the enterprise).

### B.

We have jurisdiction in No. 95-40175. Any prematurity was cured by operation of Fed. R. App. P. 4(a)(2), whereby a notice of appeal filed after the court announces a decision (here, the order granting summary judgment) but before entry of judgment is treated as filed as of the eventual entry of judgment. When the district court ultimately entered final judgment (which embodied the results

5

of the bench trial and the summary judgment), the entry of judgment validated the notice of appeal.

## C.

We reject the third-party defendants' argument that the appeal in No. 95-40514 is premature. A partial entry of judgment under rule 54(b) was not necessary after the bench trial, because Guy E. Matthews, Matthews and Associates, Louis Dugas, Jr., William L. Romans II, John Cuttright, Century National Bank ("CNB"), and the FDIC were never properly joined as parties.

The third-party defendants, without leave of court, filed a cross-claim against these parties. Cross-claims may be filed only against parties to the suit, however. FED. R. CIV. P. 13(h). The rule allows joinder of new parties, but only in accordance with the provisions of FED. R. CIV. P. 19 or 20. The third-party defendants failed to demonstrate before the district court, or on appeal, that the additional parties met the requirements of rule 19 or 20. Because the additional parties were never properly joined, the court was not required to make the determination required by rule 54(b).

## III.

Vickers asserts that Polo Club should have been denied recovery, based on his personal defenses to the Note or the doctrine of laches. In the alternative, he argues that the amount

of the note should be reduced according to the terms of the Loan Agreement.

A.

We reject Vickers's personal defenses.[2]  The district court did not err in finding that Polo Club owned the Note.  There is ample evidence in the record to support the finding.

The Loan Agreement also fails to provide Vickers with a defense.  Even assuming that the Note and the Loan Agreement must be read together, Vickers misreads the two documents.  The Loan Agreement does not provide that CNB (and thus its successor Polo Club) may satisfy the loan only through the proceeds of the Al Monsoori lawsuit.  Rather, it requires Vickers to use those proceeds to pay the loan before using the proceeds for any other purpose.[3]  The Loan Agreement obligates Vickers, not the note holder.

---

[2]  The federal holder-in-due-course doctrine does not apply to non-negotiable promissory notes. *Resolution Trust Corp. v. Montross*, 944 F.2d 227, 228-29 (5th Cir. 1991) (en banc), *reinstating in part Sunbelt Sav. v. Montross*, 923 F.2d 353 (5th Cir. 1991).  The Note does not contain a promise to pay a "sum certain," as it does not reference a readily ascertainable interest rate.

[3] The relevant provision of the Loan Agreement states:

Debtor [Vickers] further agrees that, in the event the Jim Arnold Corporation recovers judgment and collects money thereon from a lawsuit now pending in The United States District court [sic] for the Southern District of Texas, Numbered H85-4884 . . . that such money collected shall be paid to Century National Bank and shall be applied to the principal of the new note without changing the terms of payment as set out in the new note.

B.

Vickers's laches defense is also without merit, as he has failed to establish the essential elements. He points to nothing in the record to demonstrate that Polo Club's delay was unreasonable. *See In re Casco Chem. Co.*, 335 F.2d 645, 651 (5th Cir. 1964); *City of Fort Worth v. Johnson*, 388 S.W.2d 400, 403 (Tex. 1964). Given that Polo Club asserted its rights within the relevant limitations period, Vickers must allege extraordinary circumstances that render it inequitable to enforce Polo Club's rights. *See Barfield v. Howard M. Smith Co.*, 426 S.W.2d 834, 840 (Tex. 1968). Moreover, Vickers has failed to prove that he has changed his position, to his detriment, because of the delay. *See Johnson*, 388 S.W.2d at 403. Absent such proof, the finding that Vickers was prejudiced is insufficient to support laches.

C.

We also reject Vickers's counterclaim against Polo Club. Our review of the record demonstrates that any finding other than one that treats the settlement with the Al Monsoori group as a "win" would be clearly erroneous. We therefore decline to remand this issue for further fact findings.

IV.

We now turn to the third-party defendants' claim that the

8

district court erred in granting summary judgment for Vickers on the issue of indemnification.  The third-party defendants argue first that the court erred in denying their motion to dismiss.  In that motion, they asserted that Vickers's claims were barred by res judicata and the doctrine of abstention.  In the alternative, they argue that summary judgment was improper because there were genuine issues of material fact regarding res judicata, abstention, fraud, and breach of the indemnity agreement.  Because of the overlap between the issues raised in the motion to dismiss and the opposition to summary judgment, we discuss each substantive claim independently.

## A.

The third-party defendants failed to prove that the district court abused its discretion by refusing to abstain.  The third-party defendants have failed to articulate a single reason why the district court abused its discretion in refusing to abstain.  Except in the exceptional case, federal and state court proceedings on the same claim are tolerated.  *Carpenter v. Wichita Falls Indep. Sch. Dist.*, 44 F.2d 362, 371 (5th Cir. 1995).  This case is far short of "exceptional."  *See Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 814 (1976) (stating that abstention is proper (1) "in cases presenting a federal constitutional issue which might be mooted or presented in a different

posture by a state court determination of pertinent state law" and (2) "where there have been presented difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case at bar").

## B.

The district court did not err in rejecting the defense of res judicata.[4]  The third-party defendants failed to present a genuine issue of material fact on identity of the parties.[5]  The extent of the evidence that Ennis and Arnold were parties to State Suit No. 1 was Vickers's motion for leave to add Arnold and Ennis to the lawsuit.

There is no evidence that the state court granted Vickers

---

[4] Throughout their brief, the third-party defendants refer to this argument as "*res judicata* or collateral estoppel."  The only case citations are to cases that refer to res judicata.  In addition, the third-party defendants fail to make any cogent argument concerning collateral estoppel. Accordingly, the third-party defendants have waived any collateral estoppel argument.  *See* FED. R. APP. P. 28(a)(6) (requiring that appellant's brief "contain the contentions of the appellant on the issues presented, and the reasons therefor, with citations to the authorities, statutes, and parts of the record relied on"); *Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 260 n.9 (5th Cir. 1995) (holding that "failure to provide any legal or factual analysis of an issue results in waiver"); *United States v. Maldonado*, 42 F.3d 906, 910 n.7 (5th Cir. 1995) (reasoning that failure to do more than vaguely refer to issue constitutes waiver); *Zuccarello v. Exxon Corp.*, 756 F.2d 402, 407 (5th Cir. 1985) (noting that court will not consider issue that was not briefed under standards of rule 28).

[5] In Texas, res judicata "prevents the relitigation of a claim or cause of action that has been finally adjudicated, as well as related matters that, with the use of due diligence, should have been litigated in the prior suit." *Jones v. Sheehan, Young & Culp, P.C.*, 82 F.3d 1334, 1338 (5th Cir. 1996).  To invoke the doctrine, the proponent must prove:  (1) there was identity of parties or privity between them, (2) the judgment was rendered by a court of competent jurisdiction, (3) there was a final judgment on the merits, and (4) the prior claim involved the same claim or cause of action.  *Id*.

leave to add them as necessary parties. There is no way to infer from a request to amend that the court granted such a request. It was incumbent on the third-party defendants to produce competent summary judgment evidence on this point, and they failed to do so. Without such evidence, the third-party defendants did not raise a genuine issue of material fact.

## C.

The district court did not err in finding that the third-party defendants were bound by the indemnity agreement. The "interpretation of an unambiguous contract is [a] legal question . . . and a court may decide the issue on a motion for summary judgment." *Hanssen v. Quantas Airways Ltd.*, 904 F.2d 267, 269 n.3 (5th Cir. 1990). The third-party defendants do not argue that the release agreement is ambiguous.

The district court concluded that "the terms of the indemnity agreement are not contingent on mutual performance." The language in the Release Agreement "only makes Vickers' release contingent on performance. It does not make the indemnity for corporate debt contingent." Nothing persuades us that the district court erred in this regard.

## D.

The third-party defendants' fraud claim is also without merit.

11

The court granted summary judgment for Vickers on the Release Agreement. In their response to summary judgment and on appeal, the third-party defendants assert that there is evidence that Vickers fraudulently obtained the Note in 1988. Assuming that to be true, Vickers's fraudulent conduct toward CNB is irrelevant to the validity of the Release Agreement negotiated by Vickers and the third-party defendants. Moreover, the appellants have never tried to explain how it would be relevant.[6]

For the foregoing reasons, we AFFIRM.

---

[6] *See supra* note 4.