Tommy NAQUIN, et al., Plaintiffs–
Appellants,

v.

PRUDENTIAL ASSURANCE CO., LTD.,
et al., Defendants–Appellees.

No. 94–30480.

United States Court of Appeals,
Fifth Circuit.

Sept. 14, 1995.

Jerry B. Read, Biloxi, MS, for appellants.

Warren M. Faris, James R. Swanson, Stone, Pigman, Walther, Wittmann & Hutchinson, New Orleans, LA, Harold K. Watson, Michael L. Goldstone, Liddell, Sapp, Zivley, Hill & LaBoon, L.L.P., Houston, TX, Mat M. Gray, III, Thomas C.W. Ellis, Rice, Fowler, Kingsmill, Vance, Flint & Booth, New Orleans, LA, Richard M. Perles, Kops, Lee, Furtrell & Perles LLP, New Orleans, for appellees.

Before SMITH, WIENER and DeMOSS, Circuit Judges.

WIENER, Circuit Judge:

Plaintiffs–Appellants Tommy Naquin, Eric Penniman, and Charles Neese ("Plaintiffs") appeal an adverse ruling of the United States District Court, dismissing under Fed. R.Civ.P. 12(b)(6) their diversity of citizenship action [1] against Defendants–Appellees ("Underwriters") based on section A. of the Louisiana Direct Action Statute (LDAS).[2] The district court classified as contractual the cause of action upon which Plaintiffs had obtained the judgment against the Underwriters' insured that Plaintiffs seek to enforce in this suit, despite their insistence that (1) the cause of action upon which they had obtained their judgment is one created by the federal Penalty Wage Statute [3] and thus

---

1. 28 U.S.C. § 1332.

2. LSA–R.S. 22:655 (West Supp.1994).

3. 46 U.S.C. § 10313(g) ("When payment [of a seaman's wages] is not made as provided under subsection (f) of this section without sufficient cause, the master or owner [of the vessel upon which the seaman serves] shall pay to the seaman 2 days' wages for each day payment is delayed.").

is not an action sounding in *contract* (Plaintiffs had no contractual relationship with the judgment debtor) but one sounding in *tort* by virtue of the judgment debtor's breach of its non-consensual statutory duty owed to Plaintiffs; (2) the district court mischaracterized Plaintiffs' claim against Underwriters as one for wages over Plaintiffs' assertion that their original claim was for statutory penalties against a non-employer with whom Plaintiffs had no contractual relationship; and (3) Plaintiffs have brought the instant suit under section A. of the LDAS to enforce a final, executory judgment rendered against the insolvent insured of the Underwriters—not under the "direct action" provisions of the LDAS as an unliquidated tort claim against the Underwriters—making irrelevant the nature of the cause of action underlying Plaintiffs' executory judgment.

Having carefully considered the district court's Judgment and its Memorandum and Order, the largely uncontested facts of this case, and the legal arguments advanced by able counsel, both orally and in briefs, we conclude that the central legal questions of this controversy are not only res nova, having not as yet been answered definitively by the Supreme Court of Louisiana, but are also such complex issues of unique importance to the law of Louisiana that we should refrain from making an "Erie guess" as to how the high court of Louisiana might rule, and instead should request binding advice from that court through the certification process.[4]

## I

## STYLE OF THE CASE

The style of the case that we certify is *Tommy Naquin, Eric Penniman and Charles Neese, Plaintiffs–Appellants versus Prudential Assurance Co., Ltd., et al., Defendants–Appellees*, No. 94–30480, United States Court of Appeals for the Fifth Circuit,

4. Sup.Ct. Rules, Rule 12, 8 LSA–R.S. (West Supp.1994).

5. The Policy constitutes a "liability policy" for purposes of the LDAS. *See Grubbs v. Gulf International Marine, Inc.,* 625 So.2d 495 (La.1993). Whether it provided coverage to KTI for the

on appeal from the United States District Court for the Eastern District of Louisiana.

## II

## FACTS AND PROCEEDINGS

Plaintiffs are seamen formerly employed by Kramo Limited (UK) ("Kramo"), a United Kingdom corporation. At all relevant times, Plaintiffs served aboard the M/V ACADIAN LIBERTY (the "Vessel"), a ship then owned, not by Plaintiffs' employer, Kramo, but by Kramo Transportation, Inc. ("KTI"), a Texas corporation and subsidiary of Kramo.

Underwriters issued a policy of Protection and Indemnity insurance (the "Policy")[5] to Kramo, under which KTI was an additional named insured. The Policy was delivered in Louisiana, was in full force and effect with premiums paid at all times pertinent to this case, and provided coverage to Kramo and KTI against myriad specified risks, including "repatriation" and "fines and penalties."

While Plaintiffs were employed by Kramo and were working aboard the Vessel, it was seized in Panama by creditors of the owner, KTI. As a result, Plaintiffs' employment with Kramo terminated, and Kramo repatriated them to Louisiana. Kramo refused, however, to pay Plaintiffs' unpaid wages, which had accrued prior to seizure of the Vessel. Plaintiffs sued both Kramo and KTI, seeking wages from the former (with which they were in contractual privity) and statutory penalties from the latter (with which they had no contractual relationship but which, as vessel owner, owed Plaintiffs a statutory duty under the Wage Penalty Act).

Plaintiffs subsequently settled their breach of contract claims against Kramo for past due wages but were left to litigate their statutory penalty claims against KTI, eventually obtaining a judgment in the district court against KTI, as vessel owner, for statutory

claims of Plaintiffs that produced the judgment sued on here and whether the Underwriters have affirmative defenses against payment of that judgment are not issues that were before the district court on a motion to dismiss under Rule 12(b)(6).

penalties.[6] With that final, executory judgment in hand, and with the knowledge that KTI was insolvent, Plaintiffs filed the instant suit against the Underwriters under section A. of the LDAS, which provides, in pertinent part:

A. ... any judgment which may be rendered against the insured for which the insurer is liable [and] which shall have become executory, shall be deemed prima facie evidence of the insolvency of the insured, and an action may thereafter be maintained within the terms and limits of the policy by the injured person ... against the insurer.[7]

Underwriters argued that the LDAS does not afford Plaintiffs a right of action against Underwriters because (1) Plaintiffs' claim is based on the breach of a contract to pay seamen's wages, and (2) the courts of Louisiana have construed the LDAS to be available only to tort victims seeking compensation for personal injury or corporeal property damage.[8] Plaintiffs argued that, to the contrary, (1) the judgment sued on in the instant case *is* based on tort, not breach of contract, because (a) Plaintiffs had no contractual relationship with KTI, and (b) Louisiana would classify the violation of a statute like the Penalty Wage Statute as an "offense" or "quasi-offense," and thus as a tort, generating an obligation ex delictu, not ex contractu; and, (2) alternatively, the instant case is not a "direct action" against an insurer on an *unliquidated* claim—tort or otherwise—but is a suit on an executory judgment, for the enforcement of which section A. of the LDAS gives the judgment creditor of an insolvent insured under a policy delivered in Louisiana a right of action against the insurer—to which the insurer may then assert any affirmative defenses, including inapplicability or non-coverage of the policy, when defending the suit on the judgment—irrespective of the nature of the cause of action underlying such judgment.

The district court essentially agreed with the Underwriters, concluding that the LDAS is limited to causes of action in tort, and that Plaintiffs' claim (and, presumably, its judgment against KTI) is for breach of contract, i.e., failure to pay past due wages. The district court dismissed Plaintiffs' suit under Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted, and this appeal ensued.

## III

### QUESTIONS CERTIFIED

#### A.

Is a judgment in favor of a seaman under the federal Penalty Wages Statute, 46 U.S.C. § 10313, against a vessel owner, particularly one who is not the employer of the seaman, deemed to sound in tort (offense or quasi-offense) for purposes of the Louisiana Direct Action Statute, LSA–R.S. 22:655 (West Supp. 1994)?

#### B.

If Question A. above is answered in the negative, then for purposes of section A. of the LDAS, is such a judgment nevertheless a *novation*, displacing—through confusion, merger, or some similar concept—the cause of action underlying that judgment, thereby terminating the existence of the cause of action and, with it, the question of the nature of the claim, i.e., tort (offense or quasi-offense) or contract; or, to the contrary, does such judgment retain the classification of its underlying cause of action as either contract or tort?

#### C.

If (1) the answer to Question B. above is that, for purposes of section A. of the LDAS, the judgment retains the character of the underlying cause of action, and (2) by virtue of a negative answer to Question A. above, the cause of action underlying the judgment

---

**6.** *George v. Kramo,* 796 F.Supp. 1541 (E.D.La. 1992).

**7.** LSA–R.S. 22:655 (West Supp.1994).

**8.** Underwriters also contended that, because (1) Plaintiffs' judgment against KTI is not for personal injury or corporeal damage, and (2) the Policy is an "indemnity policy," Plaintiffs have no cause of action to enforce their statutory penalty judgment against Underwriters.

sought to be enforced does not sound in tort, does a judgment creditor under a final, non-appealable and executory judgment against a judgment debtor who is insolvent nevertheless have a right of action under section A. of the LDAS to enforce such judgment—regardless of the nature of the original cause of action upon which that judgment was obtained—against the issuer of a policy of Protective and Indemnity insurance delivered in Louisiana and assertedly providing applicable coverage of the obligations of the insolvent judgment debtor?

## IV

### CONCLUSION

This court disclaims any intention that the Supreme Court of Louisiana confine its reply to the precise form or scope of the legal questions that we certify. If the Supreme Court of Louisiana accepts this Certificate, the answers provided by that Court will determine the issues on appeal in this case.

We transfer to the Supreme Court of Louisiana with our certification the record on appeal and the appellate briefs and related documents of this case.

This panel retains cognizance of the appeal of this case pending response from the Supreme Court of Louisiana, and this court hereby CERTIFIES the questions posed above.