**In re COMBUSTION, INC.**

**Civil Action No. 94MDL4000.**

United States District Court,
W.D. Louisiana,
Lafayette–Opelousas Division.

March 12, 1997.

---

## MEMORANDUM AND ORDER

HAIK, District Judge.

Before the Court are twenty-four (24) Motions for Summary Judgment filed by various insurers against their insureds on the issue of coverage under the "sudden and accidental" and "absolute" pollution exclusion clauses. See Attachment A. These motions were argued before the Court on December 20, 1996. The Court finds that there are material issues of fact as to whether contamination occurred either from long-term exposure or from fires, floods and spills, and that as a matter of law the "sudden and accidental" clause does not preclude coverage for long-term occurrences. Additionally, the Court finds material issues of fact exist as to the intent of the polluting actors with regard to the "absolute" exclusion. For the reasons discussed below, these Motions are DENIED.

The Motion for Summary Judgment filed by Travelers Indemnity Company against Universal Manufacturing, under Illinois law, will be considered in a separate ruling.

### I

Volumes of materials have been written about the interpretation of the "sudden and accidental" and the "absolute" pollution exclusion clauses in commercial general liability (CGL) policies. Both sides of this dispute have supplied the Court with ample authority from other jurisdictions in support of or denying coverage. This Court has previously ruled that Louisiana law governs the interpretation of these insurance contracts. Thus, this Court must look to the Supreme Court of Louisiana for guidance in rendering this decision.

### II

The facts, jurisdictional statement, and procedural history set out in the Court's Memorandum and Order of January 15, 1997 is hereby adopted in full.

### III

Under the standard policy form, the CGL policy protects the insureds' premises against operations, products, and independent contractor hazards. Most of the CGL policies at issue are pre–1986 policies containing the standard "sudden and accidental" exclusion or language so closely resembling the well-known exclusion that all insurers whose policies contained the "sudden and accidental" exclusion adopted the master brief filed by Travelers Indemnity on the issue.

All of the policies at issue provide coverage per "occurrence." An "occurrence" policy covers all sums which the insured shall become legally obligated to pay as damages because of bodily injury, property damage or personal injury caused by an occurrence to which this insurance applies. The definition of "occurrence" in the standard CGL policy after 1966 provides, in substance, that an

occurrence means an accident or continuous or repeated exposure to conditions which results, during the policy period, in bodily injury or property damage neither expected nor intended from the standpoint of the insured. RUSSELL, LEVIN, PARRIS, *Insurance Coverage for Toxic Exposure and Environmental Damage Under the Standard Form CGL Policies,* SA88 ALI–ABA 241, 260 (1996).

The pre–1986 "sudden and accidental" exclusion in the policies states generally:

This insurance does not apply . . .

(f) to bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acid, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon the land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge is sudden and accidental.

Language of this nature was universally included in CGL policies issued to insureds from 1970 until 1986, when it was replaced by the "absolute" pollution exclusion.

The motions before the Court involve CGL policies issued from the late 1960s through 1994. The interpretation of both pollution exclusion clauses are at issue. In each case, the insured was a generator or transporter of hazardous waste that it sold or gave away or paid to have taken away from its facility to an independent waste recycling site. The insureds are allegedly liable for damages to surrounding population and property near the site caused by the migration of hazardous substances off-site through the air, soil, and water. Particularly important factually for these motions is that the personal injury and property damage for which the insureds are allegedly responsible resulted both from the continuous and systematic recycling process, and from fires, floods, and spills that occurred throughout the operation of the business and the site cleanup.

### IV

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Summary Judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The burden then shifts to the nonmovant to designate specific facts beyond the pleadings showing that there is a genuine issue for trial. *Willis v. Roche Biomedical Labs, Inc.,* 61 F.3d 313, 315 (5th Cir.1995).

■ With regard to the "sudden and accidental" exclusion, the insurers have failed to show that there is no genuine dispute regarding the facts supporting their motions. The insurers' position is two-fold. First, assuming continuous, long-term, systematic contamination—which they deny in interrogatories—the pollution exclusion clause bars coverage as a matter of law (addressed in part V). But building on this position, the insurers' next argue that *because* there was continuous, long-term contamination, the accidents such as fires that only exacerbated the long-term damage cannot trigger coverage.

This second contention is problematic. The allegations of harm from long-term contamination and from contamination by fires, floods, and spills are *both* contested issues that must be determined by the trier of fact. The resolution of the insurers' second contention is inappropriate for Summary Judgment because it is based on a disputed fact. As a corollary and yet unanswered by the insurers is whether coverage exists for the fires, floods and spills under the "sudden and accidental" exclusion if the trier of fact finds that no long-term, harmful migration occurred but that damage resulted from the contamination caused by the fires, floods and spills. Because there is a material issue of fact with regard to the occurrence of damage as a result of long-term, continuous migration, insurers argument for summary judgment that fires, floods and spills should not be considered as polluting events fails.

### V

■ In addition, this Court will not grant partial Summary Judgment for the insurers

that as a matter of law the "sudden and accidental" exclusion bars coverage for long-term contamination. The centerpiece of this dispute is the definition of "sudden." The insurers argue that "sudden" means "boom," "quick," or "rapid" i.e. that the definition of sudden must contain an element of time, thereby excluding from coverage for long-term contamination. On the other hand, the insureds argue that the element of time is not necessarily incorporated into the plain meaning of "sudden" because such an interpretation would eviscerate coverage under CGL policies and leave the insureds potentially exposed for acts of negligence or for strict liability they intended to insure. In essence, the insureds contend that "sudden" means "unexpected," or that the meaning is ambiguous and according to the Civil Code articles on contract interpretation, coverage should be interpreted in favor of the insureds.

The Louisiana Supreme Court has not interpreted the meaning of "sudden and accidental" in a CGL occurrence policy. It is incumbent upon this Court to make an *Erie* guess as to the meaning of the terms. Where the state's highest court has not rendered an opinion as to a particular issue, the federal court's task is to determine how it believes the state's highest court would rule. *See Naquin v. Prudential Assurance Co.*, 65 F.3d 427 (5th Cir.1995); *Foster v. International Business Machines*, 1996 WL 194938 at *1 (E.D.La.1996).

An insurance contract constitutes the law between the parties, *Pareti v. Sentry Indemnity Co.*, 536 So.2d 417 (La.1988), and must be interpreted using the general rules of contract interpretation as set forth in the Civil Code. *Crabtree v. State Farm Ins.*, 632 So.2d 736 (La.1994). Interpretation of a contract is the determination of the intent of the contracting parties, LSA C.C. art. 2045, gleaned through the plain and popular meaning of the words used, LSA C.C. art. 2047, but the determination of whether a contract is clear or ambiguous remains a question of law. Ambiguity in an insurance policy must be resolved by construing the document as a whole. *LIGA v. Interstate Fire & Casualty*, 630 So.2d 759 (La.1994).

Any exclusion in an insurance contract must be clear and unmistakable. *Roger v. Estate of Moulton*, 513 So.2d 1126, 1130 (La.1987). Once coverage "has been extended, as it is quite clearly the purpose of the policy to do ...", it should be withdrawn only when the exclusion is established with certainty. And because comprehensive exclusion is violative of the purpose and intent of policy coverage, exclusions must necessarily be specific...." *Anderson v. Indiana Lumbermens Mutual Ins. Co.*, 127 So.2d 304, 306 (La.App.1961). When the general rules of contract interpretation are applied to an exclusion, the result is the exclusionary clause is interpreted liberally in the insured's favor, in favor of coverage. LSA C.C. art. 2056; *Breland v. Schilling*, 550 So.2d 609 (La. 1989); *Borden, Inc. v. Howard Trucking Co., Inc.*, 454 So.2d 1081 (La.1983).

As argued by the insureds and the insurers respectively, the meaning of "sudden" can be either "unexpected" or "all at once." The word "sudden" is derived from the past participle of the Latin word "subire," meaning "to come up, occur unexpectedly." The root meaning of the word implies nothing about the duration of an event. NANCY BALLARD, PETER MANUS, "Clearing Muddy Waters: Anatomy of the Comprehensive General Liability Pollution Exclusion," 75 Cornell L.Rev. 610, 613 (1990). The first definition of "sudden" in *Webster's Ninth New Collegiate Dictionary*, p. 1178 (1990), states nothing of time while the second definition includes "haste." This Court finds the dictionary definition of "sudden" for purposes of policy interpretation to be ambiguous and thus must be construed in favor of the insureds, if such interpretation is in harmony with the language and intent of the policy as a whole.

The overall structure of the CGL policy provides coverage for damages caused by occurrences that happen quickly and by occurrences that happen repeatedly over a period of time. This definition of "occurrence" provides no caveat regarding the duration of the accident. It is well documented that the intent of the insurance industry when the "sudden and accidental" exclusion was added

was to clarify the meaning of "occurrence." The industry would not extend coverage for intended or expected discharges. *See La. Environmental Handbook*, § 23.9 (6/92); *Morton International Inc. v. General Accident Ins. Co. of America*, 134 N.J. 1, 629 A.2d 831 (1993) (describing the regulatory history of the "sudden and accidental" exclusion).

In this Court's opinion, to invoke the "sudden and accidental" exclusion and preclude coverage for an event that causes damage by contamination simply because the occurrence *ended untimely*, with no consideration of the intent of the polluter, is the tail wagging the dog. More important, such interpretation betrays the essence of this type of CGL policy—to protect the insured from expenses resulting from occurrences he neither expected nor intended. The focus in determining coverage must be on the instance of the happening of the occurrence not on the ending of one. In addition, to interpret the "sudden and accidental" clause otherwise would result in comprehensive exclusion which violates the nature and intent of CGL policy coverage.

Thus, because the term "sudden" is ambiguous, because the overall structure of the CGL policy and intent of its authors indicates coverage for damages except where expected and intended pollution occurs, and because policy exclusions must be strictly interpreted, this Court finds that as a matter of law the "sudden and accidental" exclusion does not preclude coverage for the continuous, long-term pollution.

### VI

■ A second master brief on the "absolute" pollution exclusion was also filed and adopted by the remaining insurers having similar exclusions. As a general rule, the absolute exclusion applies to:

> bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water.

■ In this instance, the Louisiana Supreme Court provides guidance with regard to interpretation of the "absolute" exclusion. *See South Central Bell Telephone Company v. Ka-Jon Food Stores of Louisiana, Inc.*, 644 So.2d 357 (La.1994). The insurers dispute the relevance of *Ka-Jon* because the Louisiana Supreme Court vacated its Judgment when the insurer discovered that the policy at issue may never have properly included the absolute exclusion. However, the Louisiana Supreme Court allowed the opinion to be published, and in this Civilian jurisdiction publication is the key for deciding whether decisions are precedent. *Roberts v. Sewerage and Water Board*, 634 So.2d 341 (La.1994); WILLIAM F. RIDLON, "The Absolutely Unclear Status of Absolute Pollution Exclusions in Louisiana," 3 La.Envtl.Lawyer 1, (1996). This Court agrees with its sister court that "while *[Ka-Jon]* may only have the precedential value of an advisory opinion, it does provide clear and unmistakable guidance to state and federal judges as to how, in the future, the Louisiana Supreme Court most likely would interpret a pollution exclusion clause like [the absolute pollution exclusion clause] before this court …" *Bituminous Fire & Marine v. Fontenot*, 907 F.Supp. 193, 196 (M.D.La.1995).

The clear and unmistakable message is that with regard to the absolute exclusion, intentional polluters may not rely on their insurers to pay for damages caused by their intentional acts. After an extensive review of the development of the pollution exclusion clause in Louisiana, including the debate between the insurance industry and state insurance regulators, the Louisiana Supreme Court held that "the absolute pollution exclusion clause is applicable to all damages resulting from intentional pollution or environmentally hostile conduct. The pollution exclusion precludes coverage of all types of damages resulting from deliberate, knowing and intentional acts of pollution.... This absolute exclusion of coverage is consistent with the public policy which condemns intentional pollution and proscribes insuring intentionally wrongful conduct." *Id.* at 365.

On the other hand, the Supreme Court noted that the absolute exclusion is not applicable to occurrences involving only incidental pollution. As an example, the Court cited a case where a contractor contracted to spray-paint a bridge and in the process sprayed automobiles passing below. After paying to clean the automobiles, the contractor sued his insurer for indemnification. The insurer argued that because the contractor intended to spray the paint in a method and under conditions expected to cause damage to automobiles, the exclusion barred indemnification for the acts. The Court found that "[a]lthough the insurer in this case tries to place the contractors' method of operation within the class of intentional wrongdoing, nothing in the record suggests that it was any part of the contractor's purpose to spray the paint on automobiles crossing the bridge while it was being painted.... The choice to paint the bridge by methods and under conditions expected to cause some compensable harm was intentional, as the insurer asserts, but it was not the kind of purposeful infliction of injury that excludes [coverage]." *A–1 Sandblasting & Steamcleaning Co., Inc. v. Baiden, Underwriters at Lloyds, and other English Companies,* 293 Or. 17, 643 P.2d 1260, 1265 (1982). Thus, *Ka-Jon* leads this Court to conclude that the "absolute" exclusion bars coverage for knowing, intentional pollution, whereas incidental pollution from routine business operations should be covered. This Court adopts in full the Louisiana Supreme Court's interpretation of the absolute pollution exclusion clause.

In the case at bar, the insurers argue that the intentional acts of pollution by the site workers—not by the insureds—are the type of intentional acts for which coverage for the insureds should be excluded. This Court need not make the legal determination now of whether intent in this case must be judged from the viewpoint of the insured or, much more broadly, from the viewpoint of any polluting party, because the Louisiana Supreme Court has stated that intent is a fact-sensitive determination and not appropriately determined in a motion for summary judgment. *See Breland v. Schilling,* 550 So.2d 609, 612 (La.1989).

For the reasons discussed above, the motions for Summary Judgment as listed in Attachment A, based on both the "sudden and accidental" and the "absolute" pollution exclusions are hereby DENIED.

### ORDER

The foregoing motions by insurers for Summary Judgment on the issue of Pollution Exclusion considered:

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the Motions are DENIED.

### ATTACHMENT A

### INSURANCE MOTIONS CHART

| INSURER/ INITIAL BRIEF | INSURED/ NAMED INSURED | ACTION | pollution exclusion doc # |
|---|---|---|---|
| Aetna Casualty & Surety Co | Avondale Industries | contract CERCLA | 6365 |
| American Motorist Insurance Co. (AMICO) | Avondale Industries | contract CERCLA | 6352 |
| Continental Insurance | Avondale Industries | contract CERCLA | 6300 |
| Eric Reins. Co. | Avondale Industries | contract CERCLA | 6396 |

| INSURER/ INITIAL BRIEF | INSURED/ NAMED INSURED | ACTION | pollution exclusion doc # |
|---|---|---|---|
| Employers Mutual Casualty Co. | Avondale Industries | contract CERCLA | 6291 |
| Everest Reins. Co. f/k/a Prudential Gibraltar Casualty Co. | Avondale Industries | contract CERCLA | 6290 |
| Granite State Ins. Co. Lexington Ins. Co. National Union Fire Ins. Co. of Pittsburgh, Pa. New Hampshire Ins. Co. | Avondale Industries | contract CERCLA | 6316 6318 |
| The Home Ins. Co. | Avondale Industries | contract CERCLA | 6354 |
| International Ins. Co/Int'l Surplus Lines Ins. Co. (ISLIC) | Avondale Industries | contract CERCLA | 6295 |
| Travelers Ind. Co. | Avondale Industries | contract CERCLA | 6362 |
| Underwriters/Lloyds | Avondale Industries | contract CERCLA | 6335 |
| International Ins. Co & US Fire Ins. Co. | LP & L | contract | 6298 |
| London Market Vesta Ins. Co. | LP & L | contract | 6636 |
| Home Insurance Co. | LP & L | contract | 6355 |
| First Horizon | Southern Scrap | contract | 6332 |
| International Ins. Co. U.S. Fire Ins. Co | Southern Scrap | contract | 6297 |
| Continental Ins. Co. | Southern Scrap | contract | 6302 |
| Employers Reinsurance Corp. | Southern Scrap | contract | 6341 |
| Lexington Ins. Co. | Southern Scrap | contract | 6309 |
| Stonewall Ins. Co. | Southern Scrap | contract | 6322 |
| Twin City Fire Ins. Co. | Southern Scrap | contract | 6370 |
| Century Ind. Co. | Southern Scrap | contract | 6326 |
| Transport Ins. Co. | Younger Brothers | contract cov. | 6337 |