**SHAW CONSTRUCTORS, INC., f/k/a United Crafts, Inc. a Shaw Group Company,**

v.

**ICF KAISER ENGINEERS, INC., and PCS Nitrogen Fertilizer, L.P., et al.**

**No. CIV.A. 99–254–C–1.**

United States District Court, M.D. Louisiana.

Aug. 15, 2001.

Eric Alan Kracht, David W. Carley, Kracht & Graves, LLP, Baton Rouge, LA, Patrick Wayne Pendley, Pamela Pendley Baudin, Plaquemine, LA, for plaintiff.

Eugene R. Preaus, Jennifer M. Lawrence, Preaus, Roddy & Krebs, New Orleans, LA, Alberta L. Adams, Krebs, Farley & Pelleteri, L.L.C., New Orleans, LA, for PCS Nitrogen Fertilizer, L.P., PCS Nitrogen Fertilizer, Inc., PCS Nitrogen, Inc., Potash Corp. of Saskatchewan, Inc., defendants.

## RULING ON MOTIONS FOR PARTIAL SUMMARY JUDGMENT

RIEDLINGER, United States Magistrate Judge.

This matter is before the court on a motion for partial summary judgment filed by plaintiff Shaw Constructors, Inc. (Shaw), record document numbers 31–33, 40, 41, and a motion for partial summary judgment filed by defendant PCS Nitrogen Fertilizer, L.P. (PCS), record document numbers 42–44, 46–51. Both motions are opposed.

This case involves the interpretation of a construction contract and the application of the Louisiana Private Works Act. Specifically, the court must decide whether a provision in a subcontract created a *stipulation pour autrui*—a benefit for a third party—in favor of PCS which is still enforceable against Shaw. If so, the court must then decide whether the *stipulation pour autrui* prohibited Shaw from filing a lien on PCS's property and bars Shaw's *in personam* claim against PCS under the Private Works Act. Because the material

facts are undisputed, the court's role is to apply Louisiana law to those facts.

After doing so, the court concludes that the lien waiver provision in the subcontract executed by Shaw created a *stipulation pour autrui* in favor of PCS which is still enforceable. The court also concludes that Shaw waived its right to file a lien and claim pursuant to the Private Works Act, and that Shaw does not have an independent, *in personam* claim against PCS.

### Undisputed Facts

The undisputed facts provide the background information necessary to understand and resolve the legal issues presented by the parties' motions for partial summary judgment.[1]

Defendant PCS entered into a contract with ICF Kaiser Engineers, Inc. and Henry J. Kaiser Company (Kaiser) to design and construct a project called the 1265 STPD Nitric Acid Facility at the PCS nitrogen plant near Geismar, Louisiana.[2] Kaiser did not furnish a bond and notice of its contract with PCS was not recorded. The contract between PCS and Kaiser provided in Section 5.3:

CONTRACTOR represents and warrants to OWNER, and covenants and agrees that the Plant, the Facility and the Work shall be at the time of Provisional Completion free and clear of any and all liens, security interests, charges, and encumbrances (collectively "Encumbrances") related to the Work.

Section 14.1 of the contract also provided as follows:

CONTRACTOR shall immediately pay and discharge or shall provide security

---

1. This summary of the undisputed material facts is based on a review of the statements of material facts and responses to those statements submitted by the parties, as well as the undisputed terms of the prime contract and subcontract. Record document numbers 32, 41, 43, 47, 48.

2. "ENGINEERING, PROCUREMENT AND CONSTRUCTION AGREEMENT BETWEEN PCS NITROGEN FERTILIZER, L.P. AND ICF KAISER ENGINEERS, INC. HENRY J. KAISER COMPANY, INC.," Plaintiff's Exhibit A (attached to affidavit of Douglas L. Fussell, executive vice-president of Shaw Constructors, Inc. since February 26, 1997).

sufficient and satisfactory in itself to pay and discharge any obligations CONTRACTOR or any of its Subcontractors or Vendors may have, in respect of which any Encumbrances may be levied or is levied against the Work, the Plant, the Facility, the Site, the Complex, or the Owner Indemnified Parties. CONTRACTOR shall indemnify, defend and hold harmless the Owner Indemnified Parties from and against any such Encumbrance and any and all associated Losses. If at any time OWNER shall receive notice or information of the recording of any such Encumbrance or any evidence of any such Encumbrance which, if valid, would constitute a legal charge upon property of OWNER, the Plant, the Facility or any part thereof, it shall forthwith communicate the receipt of such notice, information or evidence to CONTRACTOR.

The very next provision, Section 14.2 states:

If any such Encumbrance remains unsatisfied after the Date of Mechanical Completion, CONTRACTOR shall promptly refund to OWNER all amounts that OWNER my be compelled to pay in discharging any such Encumbrance.

Kaiser then subcontracted a portion of the construction project to Shaw, pursuant to a written subcontract.[3] The first paragraph of the subcontract between Kaiser and Shaw stated:

This Subcontract is made pursuant to a Contract between PCS Nitrogen Company (hereinafter called "Owner") and ICF Kaiser Engineers, Inc. and Henry J. Kaiser Company (hereinafter called "Contractor") wherein Contractor agreed with Owner to provide 1265 STPD Nitric Acid Facility.

In section VI of the subcontract Shaw agreed to a provision entitled "*Waiver of Liens*":

Subcontractor hereby agrees to and does waive his right to file any mechanic's liens or claims of any sort or kind against Owner's premises or any part thereof. Subcontractor further agrees to obtain a written waiver of the right to file any mechanic's liens or claims of any sort or kind against Owner's premises or any part thereof from any and all subcontractors, suppliers and materialmen at the time any subcontracts or purchase orders are issued in connection with the Work. In accordance with Article 25E of Exhibit "C", General Conditions for Subcontracts, a "Release and Waiver of Lien" in the form of Appendix 1–A thereto shall be executed by Subcontractor prior to release of each payment hereunder.[4]

The new PCS nitric acid facility was constructed and eventually put into service.

After performing work pursuant to the subcontract, on January 27, 1999, Shaw filed and recorded two statements of claim, lien and privilege in the parishes of Iberville and Ascension against PCS.[5] Shaw recorded amended and supplemental lien affidavits and statements of claim and privilege against PCS in the same two parishes on February 17, 1999.[6]

On February 23, 1999, Shaw filed suit against PCS and Kaiser in state court and

---

**3.** Subcontract number 67856–3003. The subcontract was between Kaiser and United Crafts, Inc., A Shaw Group Company. Plaintiff's Exhibit B (attached to Fussell affidavit).

**4.** See, copy of Appendix 1–A entitled "RELEASE AND WAIVER OF LIEN", record document number 46, Attachment A to Exhibit A attached to affidavit of Randall C. Gregory.

**5.** Mortgage book 324, entry 173, and mortgage book 0820, page 019, respectively.

**6.** Mortgage book 325, entry 041, and mortgage book 824, page 299, respectively.

the action was removed to this court on March 18, 1999. Kaiser and Shaw entered into a COMPROMISE AGREEMENT.[7] The agreement required Kaiser to make payments to Shaw, but Shaw did not waive any claim it had against PCS.[8] After making partial payments to Shaw, Kaiser discontinued payments, leaving an unpaid balance of more than $2,000,000, and filed a bankruptcy proceeding. Shaw then pursued its claims against PCS which provoked these motions for summary judgment.

### Motions for Summary Judgment

Shaw moved for partial summary judgment on the following grounds: (1) PCS is personally liable to Shaw under the Louisiana Private Works Act, LSA–R.S. 9:4801, et seq., for the unpaid work performed pursuant to the subcontract, because PCS did not require Kaiser to furnish a bond or record a notice of their contract; (2) PCS is not a third party beneficiary of, and may not enforce the waiver of liens provision of, Shaw's subcontract with Kaiser; (3) even if PCS is a third party beneficiary entitled to assert the waiver clause, Shaw only waived its right to assert *in rem* privileges against the property of PCS and did not waive *in personam* claims to hold PCS personally liable; (4) even if PCS is a third party beneficiary it cannot have greater rights than Kaiser would have against Shaw—since Kaiser breached its subcontract with Shaw, it could not enforce the waiver of liens clause so neither can PCS; (5) any *stipulation pour autrui* related to the waiver of lien clause in the subcontract was revoked or modified by Kaiser's admissions in this litigation and the subsequent compromise agreement between Kaiser and Shaw.

PCS also moved for partial summary judgment in its favor based on the following arguments: (1) as a third party beneficiary of the subcontract between Shaw and Kaiser, it is entitled to enforce the waiver of liens provision and have all claims asserted by Shaw in this lawsuit dismissed, along with cancellation of the inscription of all statements of claim and privilege and notices of lis pendens filed by Shaw; (2) alternatively, the statements of claim and privilege filed by Shaw must be cancelled because they encumber an area much larger than the area on which the subcontract work was performed, and therefore, are invalid under LSA–R.S. 9:4831.C.

### Applicable Law

Summary judgment is only proper when the moving party, in a properly supported motion, demonstrates that there is no genuine issue of material fact and that the party is entitled to judgment as a matter of law. Rule 56(c), Fed.R.Civ.P.; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). If the moving party carries its burden under Rule 56(c), the opposing party must direct the court's attention to specific evidence in the record which demonstrates that it can satisfy a reasonable jury that it is entitled to verdict in its favor. *Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512. This burden is not satisfied by some metaphysical doubt as to the material facts, conclusory allegations, unsubstantiated assertions or only a scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994). In resolving the motion the court must review all the evidence and the record taken as a whole in the light most favorable to the party opposing the motion, and draw all reasonable

---

7. COMPROMISE AGREEMENT, plaintiff's Exhibit E (attached to Fussell affidavit).

8. Shaw agreed to dismiss its claims and this lawsuit against PCS if Kaiser executed the agreement and furnished replacement security for Shaw's liens, as provided in the COMPROMISE AGREEMENT. While Shaw did execute the COMPROMISE AGREEMENT, it did not provide the replacement security.

inferences in that party's favor. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513. The court may not make credibility findings, weigh the evidence, or resolve factual disputes. *Id.; International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir.1991), *cert. denied*, 502 U.S. 1059, 112 S.Ct. 936, 117 L.Ed.2d 107 (1992).

The determination of whether a contract is clear or ambiguous is a question of law. *In re Combustion*, 960 F.Supp. 1076, 1079 (W.D.La.1997). Because the proper interpretation of an unambiguous contract is a legal issue, it may appropriately be decided on a motion for summary judgment. *Boudreaux v. Unionmutual Stock Life Insurance Company of America*, 835 F.2d 121, 123 (5th Cir.1988).

The substantive law dictates which facts are material. *Canady v. Bossier Parish School Bd.*, 240 F.3d 437, 439 (5th Cir. 2001). In this case the court must apply Louisiana's law applicable to interpretation of contracts, and third party beneficiaries, as well as the provisions of the Louisiana Private Works Act.

The principles of contract interpretation provided under the Louisiana Civil Code are well-established as are those governing third party beneficiaries.[9] Interpretation of a contract is the determination of the intent of the parties. Except for technical terms, the words of a contract must be given their generally prevailing meaning. Each provision must be read in light of the others so that each is given the meaning suggested by the contract as a whole. If the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent and the agreement must be enforced as written. Louisiana Civil Code Articles 2045, 2046, 2047, 2050.[10]

The Louisiana Civil Code provides that "[a] contracting party may stipulate a benefit for a third person called a third party beneficiary." Louisiana Civil Code Article 1978. However, such a stipulation,[11] which in Louisiana case law is often referred to as a *stipulation pour autrui*, is never presumed.[12] The intent of

---

9. Although the subcontract stated (defendant's Exhibit A, "GENERAL CONDITIONS FOR SUBCONTRACTS," paragraph 40) that it was to be interpreted under Pennsylvania law, neither party advocated its application and both cited Louisiana law as controlling the issues to be resolved.

10. See, *Williamson v. J.C. Penney Life Ins. Co.*, 226 F.3d 408, 409(5th Cir.2000); *Adams v. Unione Mediterranea Di Sicurta*, 220 F.3d 659, 677–78 (5th Cir.2000), *cert. denied*, 531 U.S. 1192, 121 S.Ct. 1191, 149 L.Ed.2d 107 (2001).

11. See, J. Denson Smith, Third Party Beneficiaries in Louisiana: The Stipulation Pour Autrui, 11 Tul.L.Rev. 18 (1936). In tracing the early history of the Louisiana law on third party beneficiaries, Smith noted that to stipulate meant to provoke a promise, therefore, to stipulate for another was to provoke a promise for another.

12. " 'But inasmuch as people usually stipulate for themselves, and not for third persons, a strong presumption obtains in any given case that such was their intention; …' " *New Orleans Public Service, Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 468 (5th Cir.)(en banc), cert. denied sub nom., *Morial v. United Gas Pipe Line Co.*, 469 U.S. 1019, 105 S.Ct. 434, 83 L.Ed.2d 360 (1984), citing, *Allen & Currey Mfg. Co., v. Shreveport Waterworks Co.*, 113 La. 1091, 37 So. 980, 984 (1905).

A stipulation pour autrui is never presumed. People usually stipulate for themselves not for third persons. The existence of such a stipulation depends on the intention to create it. *Paul v. Louisiana State Employees' Group Ben. Program*, 762 So.2d 136, 140 (La.App. 1 Cir.2000); *Liquid Drill, Inc. v. U.S. Turnkey Exploration, Inc.*, 48 F.3d 927, 931 (5th Cir.1995).

the contracting parties to stipulate a benefit in favor of a third party must be made manifestly clear. *Chevron, U.S.A., Inc. v. Traillour Oil Co.*, 987 F.2d 1138, 1147 (5th Cir.1993); *Davis Oil Co. v. TS, Inc.*, 145 F.3d 305, 311 (5th Cir.1998). For there to be a *stipulation pour autrui* there must be not only a third party advantage, but the benefit derived from the contract by the third party may not merely be incidental to the contract. The third party benefit must form the condition or the consideration of the contract, and a *stipulation pour autrui* will be found only when the contract clearly reflects the benefit to the third person as its condition or consideration. *Id.*

█ The Louisiana Supreme Court has also adopted certain factors outlined by Smith in his article *Third Party Beneficiaries in Louisiana*. These factors are: (1) the existence of a legal relationship between the promisee and the third person involving an obligation owed by the promisee to the beneficiary which performance of the promise will discharge; (2) the existence of a factual relationship between the promisee and the third person, where (a) there is a possibility of future liability either personal or real on the part of the promisee to the beneficiary against which performance of the promisor will protect the former; (b) securing an advantage for the third person may beneficially affect the promisee in a material way; (c) there are ties of kinship or other circumstances indicating that a benefit by way of gratuity was intended.[13]

This case also involves the Louisiana's revised statutes known as the Private Works Act, LSA–R.S. 9:4801, et seq. Under LSA–R.S. 9:4802.A.(1), subcontractors have a claim against the owner and a claim against the contractor to secure payment

for the price of their work. The claims against the owner are secured by a privilege on the immovable on which the work is performed. LSA–R.S. 9:4802.B. The owner is relieved of the claims against him and the privileges securing them when the claims arise from the performance of a contract by a general contractor for whom a bond is given and maintained as required by LSA–R.S. 9:4812, and when notice of the contract with the bond attached is properly and timely filed as required by LSA–R.S. 9:4811. *See*, LSA–R.S. 9:4802.-C.; LSA–R.S. 9:4811.A.; LSA–R.S. 9:4812.A.; LSA–R.S. 9:4831.

A privilege given by R.S. 9:4801, a claim against the owner and the privilege securing it granted by R.S. 9:4802, or a claim against the contractor granted by R.S. 9:4802 is extinguished if the claimant or holder of the privilege does not preserve it as required by R.S. 9:4822. LSA–R.S. 9:4823.A.(1).

The filing of a statement of a claim or privilege in accordance with LSA–R.S. 9:4822.C. is accomplished when it is filed for registry with the recorder of mortgages of the parish in which the work is to be performed. Each filing made with the recorder of mortgages which contains a reference to immovable property shall contain a description of the property sufficient to clearly and permanently identify the property. LSA–R.S. 9:4831.A. and C.

### Analysis

#### Third Party Beneficiary

There is no dispute that Kaiser did not furnish a bond and that notice of the contract between PCS and Kaiser was not recorded. Under the Private Works Act Shaw would have the right to assert a claim and privilege against PCS as provid-

---

**13.** 11 Tul.L.Rev. at 58; *Liquid Drill*, 48 F.3d at 931; *Dartez v. Dixon*, 502 So.2d 1063, 1065 (La.1987).

ed in LSA–R.S. 9:4802.A.(1). Hence, the critical issue at this juncture is whether PCS is a third party beneficiary of the waiver of liens and claims clause in the subcontract.

■ Defendant PCS argued that the subcontract evidences an express intent to confer a direct benefit upon it, and that it is entitled to third party beneficiary status. The first paragraph of the subcontract specifically states that the subcontract is made pursuant to the general contract between PCS and Kaiser, and the waiver clause itself refers to the owner and prohibits the filing of liens on its property—an obvious benefit to PCS. According to PCS, the intent to benefit PCS found in the waiver of liens clause is supported by the indemnity provision, section 13 of the general conditions of the subcontract, in which Shaw agreed to indemnify, hold harmless and release PCS from any and all claims arising out of any acts by Shaw in connection with the subcontract or the work to be performed.[14]

In response, Shaw pointed out that the provisions of the contract between PCS and Kaiser clearly contemplated that the risk and financial burden associated with any liens or encumbrances would fall on Kaiser and not PCS.[15] Therefore, Shaw argued, these provisions of the prime contract make it clear that the intent and principal purpose of the waiver clause in the subcontract was to benefit Kaiser and any benefit to PCS was merely incidental. Finally, Shaw asserted that the waiver provision itself contains no clear expression of any intent to benefit PCS—PCS is not specifically identified as a third party beneficiary in the subcontract, and there is no reference anywhere in the document to a third party beneficiary.

None of the cases cited by either party are particularly helpful in resolving this question.[16] Essentially, the resolution of the issue must turn upon the language of the contracts at issue and whether the waiver provision contained in the subcontract between Kaiser and Shaw expresses an intent that PCS be a third party beneficiary. A review of the relevant contractual provisions shows that the arguments of PCS are persuasive.[17]

The answer is found in the words of the contract itself.[18] Shaw expressly agreed to

---

14. Section 13.A. of GENERAL CONDITIONS FOR SUBCONTRACTS provided in pertinent part:

Subcontractor shall indemnify, save harmless, release and at Owner's or Contractor's request, defend the Owner and Contractor, ... from and against any and all suits, actions, legal or administrative proceedings, claims, demands, damages, penalties, fines, costs and expenses of whatsoever kind or character, including but not limited to ..., arising out of or by reason of any liability or obligation in any manner caused or occasioned or claimed to be caused or occasioned by, any act, omission, fault or negligence of Subcontractor or anyone acting on its behalf ..., in connection with or incident to this Subcontract or the Work to be performed hereunder.

15. Plaintiff's exhibit A, PCS/Kaiser contract, article 14.1.

16. The court has reviewed all the cases cited by the parties on this issue. A lengthy summary and discussion of each one would not advance the analysis or resolution of the issue based on the particular facts and circumstances of this case.

17. Shaw submitted the affidavit of Ronnie L. Volentine to support its position that it did not intend for PCS to be a third party beneficiary under the subcontract. Since the court finds that the terms of the contract are unambiguous, the affidavit was not considered.

18. The court must look to the language of the agreements to determine whether the parties clearly contemplated the benefit to the third person as its condition or consideration. *Davis Oil*, 145 F.3d at 311 (5th Cir.1998).

waive its right to file any liens or claims of any sort against the owner's premises. The subcontract clearly identifies PCS as the owner. It is difficult to conceive of a more direct conferral of a benefit to a party than for another party to state that it agrees to relinquish rights it could assert against that party in the absence of the stipulation. Shaw's argument that the subcontract does not mention the term third party beneficiary, or specifically state that PCS is a third party beneficiary, is unavailing. The law does not require such specificity, only that the intent of the contracting parties to stipulate a benefit in favor of a third party is manifestly clear. That intent to benefit PCS is plainly expressed by the waiver clause included in the subcontract between Shaw and Kaiser.

This conclusion is also supported by other parts of the subcontract and the provisions of the PCS/Kaiser contract. The preamble of the subcontract identified PCS as the owner of the project and stated that the subcontract was made pursuant to the contract between PCS and Kaiser. Kaiser agreed in its contract to pay, discharge, or provide sufficient security to pay or discharge any encumbrances levied against the work, plant, facility, site, or owner-indemnified parties. Kaiser promised that at the time of provisional completion, the plant, facility and work would be free of any and all liens, security interests, charges, and encumbrances.[19] Since Kaiser promised that PCS's work, plant and facility would be free of liens and encumbrances, Kaiser wanted a promise for a similar benefit to PCS as a condition of the subcontract with Shaw. Because of Kaiser's agreement in the prime contract, the subcontract lien waiver provision benefitted both Kaiser and PCS. This arrangement does not render the benefit which Shaw unequivocally conferred upon PCS by agreeing to the condition any less apparent or direct.[20]

This conclusion is also supported by the factors often cited by Louisiana state and federal courts applying Louisiana's law applicable to third party beneficiaries.[21] There was clearly both a legal and factual relationship between Kaiser and PCS. This legal and factual relationship certainly encompassed the possibility of future liability of Kaiser to PCS, against which the performance of Shaw under the subcontract waiver clause would protect and beneficially affect Kaiser.

The Fifth Circuit decision in *T.J. King v. Employers National Ins. Co.*[22] is persuasive in the context of this case. In *King*, a plaintiff settled with several insurers. The written agreement stated that two insurers would pay, on the plaintiff's behalf, the entire lien of a workers' compensation insurer, which was not a party to the settlement agreement. All parties to the settlement also agreed to waive any claims and defenses they had against the workers' compensation insurer with respect to the lien. In resolving the issue of whether the workers' compensation insurer was a third party beneficiary of the waiver agreement, the court had no difficulty concluding that the language of the contract clearly intended the waiver for the benefit of the workers' compensation insurer. The court noted that the parties specifically named the workers' compensation insurer in the contract and granted it specific benefits. Therefore, any benefit to the worker's

---

19. Plaintiff's exhibit A, PCS/Kaiser contract, articles 5.3, 14.1 and 14.2.

20. "[T]here is nothing conflicting in the presence of a contemplated advantage for a third person in a contract which will enure also to the benefit of the promisee." *Merco Mfg.,*

*Inc. v. J.P. McMichael Const. Co.,* 372 F.Supp. 967, 974 (W.D.La.1974).

21. See, page 10, footnote 13 of this ruling.

22. 928 F.2d 1438 (5th Cir.1991).

compensation insurer as a result of the waiver was not merely incidental. *King* 928 F.2d at 1442.

■ Shaw's argument that any *stipulation pour autrui* in favor of PCS was revoked before PCS could accept it is also without merit. Shaw contended that admissions contained in Kaiser's answer filed in this case, as well as the compromise agreement entered into between Kaiser and Shaw, effectively modified their rights and obligations under the subcontract and revoked any benefit stipulated in favor of PCS. However, the affidavit of J. Cabell Acree, III [23] and the letter supporting his affidavit show that in late February 1999 PCS expressed acceptance of any benefit in accordance with Louisiana Civil Code Articles 1978 and 1979.

These articles provide in pertinent part that "[t]he stipulation may be revoked only by the stipulator and only before the third party has manifested his intention of availing himself of the benefit." Louisiana Civil Code Article 1979. Additionally, the second paragraph of Article 1978 states that "[o]nce the third party beneficiary has manifested his intention to avail himself of the benefit, the parties may not dissolve the contract by mutual consent without the beneficiary's agreement." The comments to these articles as well as the jurisprudence state that the third party beneficiary can manifest his intention to avail himself of the benefit in any manner, and may even be implied.[24] The statements contained in Acree's affidavit are uncontradicted by Shaw.[25] Based on these facts, the only reasonable inference is that by February 26, 1999, PCS had expressed its intention to accept the benefit of the waiver provision Kaiser secured from Shaw in the subcontract. The events Shaw contends rescinded any third party benefit to PCS all occurred after February 1999.[26] Since PCS had already manifested its intention of availing itself of the benefit, the stipulation in its favor could no longer be revoked.[27]

---

**23.** Acree gave the affidavit based on his personal knowledge and in his position as senior counsel for PCS. He stated that he spoke to John Scott of Kaiser regarding the waiver of lien provision of the subcontract on or about February 26, 1999. He advised Scott that Kaiser should take no action which would waive or limit PCS third party beneficiary rights under the April, 8, 1999 subcontract and it was addressed to Scott from Acree. In this letter Acree specifically referred to "numerous occasions over the past several months" in which PCS made it clear to Kaiser that Kaiser should not take actions to waive or limit PCS third party beneficiary rights under the contract between Shaw and Kaiser.

**24.** See, Article 1978, comment (b). *Mallet v. Thibault*, 212 La. 79, 31 So.2d 601, 604–05 (1947)(question whether stipulation for the advantage of a third person has been availed of is a question of fact which must be ascertained from contemporaneous and surrounding circumstances); *First State Bank v. Burton*, 225 La. 537, 73 So.2d 453, 458 (1954); *Andrepont v. Acadia Drilling Co., Inc.*, 255 La. 347, 231 So.2d 347, 354 (1969); *T.J. King*, 928 F.2d at 1442.

**25.** Although Shaw's response to the statement of undisputed facts by PCS was to deny Acree's statements, Shaw offered no evidence to refute the information contained in his affidavit. Record document numbers 43 and 48, statement number 13.

**26.** The compromise agreement was effective March 1, 1999, and Kaiser filed its answer and confession of judgment on May 4, 1999. Record document number 11.

**27.** Article 1979, comment (b).

The acceptance by the third party is not an acceptance of an offer made to him, but a ratification of an agreement made in his favor. The jurisprudence shows that acceptance by the beneficiary does not have to be express but can be implied by actions of the beneficiary. Once the beneficiary has accepted the benefit, the stipulation cannot be revoked, unless the contract provides otherwise. Fred McGaha, Third–Party Benefi-

Relying on Louisiana Civil Code Article 1982, which states that "[t]he promisor may raise against the beneficiary such defenses based on the contract as he may have raised against the stipulator," Shaw argued that PCS cannot claim the benefit or demand enforcement of the lien waiver clause. Shaw reasoned that because Kaiser acknowledged through its answer and confession of judgment that it breached the subcontract, Kaiser cannot now demand that Shaw perform its obligations and so neither can PCS. Shaw asserted that for PCS to do so it would be claiming better rights than Kaiser.

Shaw's argument must be rejected. Article 1981 grants both the stipulator and the third party beneficiary the right to demand performance. Under the second part of the article, if Kaiser demanded performance it would be doing so not for itself but for PCS.[28] By exercising its equal right under article 1981 to claim the benefit of the stipulation, PCS cannot be exercising greater or better rights than Kaiser. Interpreting article 1982 as suggested by Shaw in the context of this case, would negate the right of PCS under articles 1978 and 1981 to accept and demand performance of the *stipulation pour autrui.* Shaw cites no authority or persuasive arguments to support such a result.[29]

**Interpretation of Waiver Provision**

■ Since PCS is a third party beneficiary of Section VI of the subcontract, the only remaining issue is the interpretation of that provision. Shaw asserted that the clause is ambiguous and only addressed *in rem* obligations, and did not even mention its *in personam* claims against PCS. Thus, any *in personam* claim it has to hold PCS personally liable was unaffected by any waiver of its *in rem* lien rights contained in Section VI of the subcontract. Shaw argued that this interpretation of the contract is supported by the provisions of the Private Works Act which make a distinction between *in rem* and *in personam* rights. According to Shaw both the statute and cases establish that *in personam* claims under the Private Works Act exist independently of *in rem* claims and may be asserted separately.

Shaw's arguments are unconvincing. Shaw essentially attempts to create an ambiguity in the contract and the law where none exists.[30] Neither the terms *in rem* or *in personam,* nor terms meaning the same things, are found in either the subcontract or the Private Works Act. The lien waiver clause clearly and unequivocally states: "Subcontractor hereby agrees to and does waive his right to file any mechanics liens or claims of any sort or kind against Owner's premises or any part thereof."[31] It is undisputed that Shaw filed and recorded statements of claim, lien and privilege in Iberville and Ascension parishes against PCS, and amended and supplemental lien affidavits and state-

ciary Contracts, 45 La.L.Rev. 797, 800–03 (1985).

**28.** Article 1981 provides:
"The stipulation gives the third party beneficiary the right to demand performance from the promisor.
Also, the stipulator, for the benefit of the third party, may demand performance from the promisor." (Emphasis added.)

**29.** Shaw cited only one case in support of its arguments, *Brandon v. Duncan,* 22 La.Ann. 360 (La.1870). This case is not controlling or

persuasive. The facts are not similar to the present case, and the court did not find that the contract contained a stipulation pour autrui.

**30.** Because the court finds the relevant language unambiguous, affidavits or other information relied upon by Shaw was not considered in interpreting the waiver provision.

**31.** Shaw did not dispute that a party may validly waive its rights, including lien rights. Record document number 46, pp. 23, 24.

ments of claim and privilege against PCS in the same two parishes.[32] The liens and claims were filed against the property owned by PCS.[33] Thus, Shaw filed liens and asserted claims against PCS which it had promised not to do.

Shaw conceded that its claims against PCS are based solely on rights created by the Private Works Act, and that under the act the privilege granted to it is accessory to and secures the personal liability of the owner under the act. Under sections 4802 and 4823, a claim against the owner and the privilege securing it are extinguished if not preserved by the filing of a statement of claim and privilege in accordance with section 4822. Thus, it follows that a personal claim against the owner cannot be preserved or is lost if there is a failure or inability to file the statement of claim, lien or privilege under section 4822.[34] Shaw cited no authority for interpreting section 4802 to provide that the owner continues to be personally liable even if there is no privilege or lien against his property as provided in section 4822, nor any authority for the argument that the act gives subcontractors a claim and privilege which are independent rights that may be asserted separately.[35]

Shaw's reliance on the Act's preservation of rights provisions is also unavailing.[36] Essentially, these parts of the statute preserve any rights or claims a contractor or subcontractor may have, such as contractual rights, in addition to those provided in the Act. Again, Shaw cites no authority that these parts of the statute are interpreted or intended to allow subcontractors to separately preserve or pursue their right against the owner and the owner's property.

### *Conclusion*

The lien waiver clause in Section VI of the subcontract between Kaiser and Shaw contains a *stipulation pour autrui* for the benefit of PCS. Before any revocation by Shaw or Kaiser, PCS manifested its intention to avail itself of the benefit of the lien waiver provision. Therefore, Louisiana Civil Code Article 1981 gives PCS the right to demand performance from Shaw of the obligation created by the waiver and to require that Shaw cancel its liens.

Finally, because the Private Works Act creates no separate *in personam* claim which Shaw can assert against PCS in these circumstances, and Shaw had no contractual privity with PCS, PCS cannot be

**32.** Record document number 32, Shaw's statement of material facts as to which there is no issue to be tried, numbers 10 and 11.

**33.** Plaintiff's Exhibits C and D (attached to Fussell affidavit).

**34.** Under the law prior to 1981, the personal liability of the owner for the obligations of his contractors or their subcontractors and the privilege on the immovable were provided for separately. The rewriting in 1981 "makes it clear that the privilege given under this section [R.S. 9:4802.B] is accessory to and only secures the personal liability of the owner imposed by Subsection A." See, LSA–R.S. 9:4802, comment (c).

**35.** The cases cited by Shaw did not involve facts similar to the present case, and were in

large part decisions rendered under the law as it existed prior to the 1981 revision of the Private Works Act.

The Expose' des Motifs preceding the 1981 revision explained that under the statute before the revision, it was possible to have situations where the owner might not be personally bound but his property would be bound for claims arising out of a contract between third persons, and vice versa. In restating the law in 1981, one of the major changes noted by the reporter was suppressing the separate privileges and personal liability given by R.S. 9:4812.

**36.** LSA–R.S. 9:4802.D. and comment (e); LSA–R.S. 9:4823.C.

liable to Shaw for the amount remaining due from Kaiser.

Accordingly, the motion for partial summary judgment filed by the plaintiff Shaw Constructors, Inc. is denied. The motion for partial summary judgment filed by defendant PCS Nitrogen Fertilizer, L.P. is granted.